LAMAR COUNTY V. S. E. CLEMENTS ET AL.

1. DEDICATION.—Where the owner of land lays out and establishes a town, exhibits a map with streets and public squares, and sells the lots with reference to such map, the purchasers acquire, as appurtenant to their lots, all rights, privileges, easements, and servitudes represented by such map to belong to them, or to their owners.
2. SAME—COUNTY-SEAT.—The sale and conveyance of lots according to such map, implies a grant or covenant, for the benefit of the owners of the lots, that the streets and other public places represented by the map shall never be appropriated by the owner to a use inconsistent with that represented by the map, on faith of which the lots are sold.
3. SAME—INTENT.—In such case, the real intent of the owner in making such dedication cannot control the effect of such acts.
4. SAME.—Nor in such case was it requisite to establish a dedication.

that the owner should entirely abandon all use, occupancy, and control of such property, where such use, &c., is necessary to its enjoyment for the purpose indicated in the act so dedicating it.

5. RESERVATION.—If the owner of land laid out in town lots indicates by a map, or by other unequivocal acts or declarations, that a particular lot or square is to be reserved or applied to a particular or specific use of a *quasi*-public character, and such as to induce purchasers of contiguous lots to give a higher price than they otherwise would, the use to which such lot was to be appropriated would no doubt be a reservation, and not, strictly speaking, a public use. But the difference, so far as the owners of the lots purchased on the faith of such reservation are concerned, is merely nominal; the owner being estopped from appropriating such lot to a purpose inconsistent with that to which it was reserved.

6. COURT-HOUSE SQUARE.—County authorities may change the court-house from one to another lot or block in the county-seat; but the abandoned lot or block, if dedicated or reserved to public use in the sale of adjoining lots, does not become subject to sale or appropriation to other uses inconsistent with the rights of such lot owners.

7. SAME.—The Legislature cannot confer upon the county authorities authority to sell or use such abandoned court-house square, to the injury of lot owners.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

Appellees, who were plaintiffs in the court below, filed their petition in the District Court of Lamar county, alleging that they were owners of property fronting on the public square of the town of Paris, the county-seat of Lamar county. That when said county-seat was located, one of the petitioners, George W. Wright, donated to said county fifty acres of land, with the express agreement that the town should be laid out with a public square, which should remain forever for the use of the public. It was alleged that the commissioners appointed to locate said county-seat did lay out the town into lots, blocks, streets, and alleys, and also a public square, and did make a map of said town on which a block was marked "public square," and at a public sale offered the lots of said town for sale, exhibiting said plat at the time of sale with the said block of ground marked "public square."

That the sale of the lots was made with reference to the public square, and by reason of that sold for higher prices.

That soon after said sale, the said county erected upon said block a court-house, in which were the offices of the clerks, sheriff, and other county officers, and in which house were held the courts for the administration of justice. The public had been accustomed to resort to said court-house and square to hold their political and other public meetings. That the petitioners had built upon the lots fronting on the public square houses of great value, and were engaged in mercantile and other business. That their lots were more valuable and their business more lucrative on account of the public square.

That the defendants, who composed the Police Court of Lamar county, had appointed a commissioner and ordered a sale of said public square, to be used for private business, and thereby the petitioners would be greatly damaged in their business, and their property rendered less valuable, and they prayed for an injunction to restrain said sale. The injunction was granted by the court.

Defendants answered, admitting the donation by Wright, but denying the agreement for a public square. They admitted that the town was laid out and the lots sold, and alleged that the block of ground in question was reserved as a public square, upon which to build a court-house for the use of the county, and was not dedicated to public use; that the county had ever since continued in the sole and exclusive use and control of the same. And they denied that it was ever given out by the commissioners that the said block of ground should be kept for a "public square," but that it was at the time understood that the words "public square" were used to designate the place where the court-house would be erected; that the County Court always used said ground for a court square, and having procured another lot, and built a new and commodious court-house thereon, the said block of ground was no longer needed for the purposes for which it was originally reserved, and was ordered to be sold, the proceeds to be applied

to the payment of the debt incurred in the building of the
new court-house. The answer denied that the plaintiffs acquired any rights in said ground, except such as were common to all citizens of Lamar county.

Defendants excepted specially to the petition; and moved
to dissolve the injunction, which was overruled. On the
trial, a verdict and judgment were had for plaintiffs, and
the defendants appealed.

*Throckmorton & Brown,* for appellants.—Upon the pleadings
were made the following issues:

Was the ground dedicated to the public, or reserved for the
use of the county?

Did the plaintiffs, by their purchase and improvement of
lots on the public square, acquire any vested right in the said
square?

Did the Police Court of Lamar county have the power to
sell said public square for private use?

1. To constitute a dedication to public use, the person making the dedication must have intended to dedicate it to public
use, and must have abandoned the possession and control of
the property to the public. (Dillon on Mun. Corps., sec. 499;
Irwin *v.* Dixion, 9 How., 10.)

2. The County Court was charged with the duty of providing a court-house, and the use of grounds for that purpose
would not be a dedication to public use. The words public
square did not denote a plaza or place open to the public,
but a place for erecting a court-house. Making the plat and
marking *public square* on it, did not dedicate that ground to
the public. (Westfall *v.* Hunt, 8 Ind., 177; City of Pella *v.*
Scholte, 24 Iowa, 283; 16 La. Ann., 404; Pitcher *v.* New
York and Erie Railroad, 5 Sand., (N. Y.,) 608.)

3. A court-house is a public use in the sense that it pertains to the transaction of public business, but it remains in
the possession and under the control of the county, and no
citizen acquires a right to its continuance. Selling lots by a

county, with reference to a square reserved for court-house purposes, and marking on it the words "public square," would not be a dedication to the use of the public. (Daniels v. Wilson, 27 Wis., 492; 8 Ind., 178.)

4. The act of making and exhibiting a map with the words "public square" on it, by an individual, would be a dedication to public use, because an individual would have no use for which to reserve a public square. But such acts by a municipal corporation, as a county, would only indicate a reservation of the ground to its own use. (8 Ind., 178; 27 Wis., 492.)

5. In order to constitute a dedication of property to public use, the proprietor must abandon the use, possession, and control of the property to the public, with the intent that the same shall be dedicated to public uses. (Irwin v. Dixion, 9 How., 30; 18 Iowa, 179; 5 Sand., (N. Y.,) 608.)

6. A municipal corporation may reserve for its use, in the erection of public buildings, a part of its lands; and although marked as a public square, will not thereby dedicate it to the public, nor part with control over it. Public buildings being erected upon the ground, the resort by the citizens to the buildings in transacting public business does not constitute a dedication, and the public would not acquire a vested right in the ground.

Where the original proprietor retains the possession and control of the property, there is no dedication to public use, although the public may be permitted to resort to the same for pleasure or profit. (18 Iowa, 179; Pitcher v. N. Y. & E. R. R., 5 Sand., (N. Y.,) 608; Van Ness v. The Mayor, 4 Pet., 232.)

7. The use of the words "public square" in our statutes, and their ordinary use, signify the court-house square of the county-seat. The commissioners being engaged in locating the county-seat and providing for the building of a court-house, the use of the words "public square" was understood to mean a plat of ground reserved for a court-house. (West-

fall *v.* Hunt, 8 Ind., 177; City of Pella *v.* Scholte, 24 Iowa, 283; 16 La. Ann., 404.)

8. If the plaintiffs acquired any right, it was to have the court-house continue on the block. No citizen can acquire a right in the continuance of a county-seat or public buildings. They are under the control of the Legislature. (Alley *et al. v.* Denson, 8 Tex., 297; Bass *v.* Fontleroy, 11 Tex., 698; Walker *v.* Tarrant Co., 20 Tex., 16; Gilmore *v.* Hayworth, 26 Tex., 89.)

9. The counties in Texas hold the lands conveyed to them in fee-simple, and have full power to sell without further legislative action. The title to the land in question was in Lamar county, in fee. (Paschal's Dig., art. 1051; Bell County *v.* Alexander, 22 Tex., 350.)

10. The county of Lamar had full power to sell the block of ground in question under the general law, and without further legislative authority. (Paschal's Dig., 1052; Bell County *v.* Alexander, 22 Tex., 359.)

11. When a municipal corporation, which is authorized to take and hold property for public use, has appropriated land to a particular use, which ceases to be necessary for such use, it may be sold, and adjacent property owners have no vested rights in the continuance of said use. (Van Ness *v.* The Mayor, &c., 4 Pet., 232; Brooklyn Park Com. *v.* Armstrong, 45 N. Y., 234; Pitcher *v.* N. Y. & E. R. R., 5 Sand., (N. Y.,) 608.)

*Hale & Scott, Wright & McDonald,* and *Maxey, Lightfoot & Gill,* for appellees.

I. We submit, that the facts clearly evidence an irrevocable dedication. The purchasers of lots fronting on this public square have covered them with valuable buildings, and having bought with reference to the square as exhibited on the diagram, and with the understanding that it would be kept open for a public use, they have acquired an easement and rights that cannot be taken away from them, neither by the

courts nor by the Legislature. (Dillon on Mun. Corps., secs. 506–510; 2 Story's Eq., sec. 1544; Cincinnati *v.* White's Lessees, 6 Pet., 431; Beatty *v.* Kurtz, 2 Pet., 566; Le Clercq *et al. v.* Gallipolis, 7 Ohio, 218; New Orleans *v.* United States, 10 Pet., 734; Bissell *v.* N. Y. Cen. R. R., 23 N. Y., 61; San Antonio *v.* Lewis, 15 Tex., 393; Oswald *v.* Grenet, 22 Tex., 94; Ransom *v.* Boal, 29 Iowa, 68 (reported in 4 Am. Rep., 195); Gilmore *v.* Hayworth, 26 Tex., 91; Preston *v.* Navasota, 34 Tex., 684; Holdane *v.* Trustees, 21 N. Y., 474; Talmage *v.* East River Bank, 26 N. Y., 105; Brown *v.* Manning, 6 Ohio, 298, and authorities there cited.)

II. Counsel for appellant contend that a public square, laid off by a county for court-house and other public purposes, is governed by a different rule from public squares in towns or cities for other public purposes. We think that no such rule can exist in principle. If the dedicator, whether a county, town, or an individual, sells the adjacent lots with reference to such open space, and thereby induces purchasers to pay higher prices for the lots around it, and expend their money in improving the lots, they acquire rights that cannot be divested. (Lebanon *v.* Warren, 9 Ohio, 80; Huber *v.* Gazley *et al.*, 18 Ohio, 18.)

Lamar county has long since received value for this public square in the increased price of the lots adjacent to it, and used it in building the court-house and jail, and this money was paid by the purchasers of this dominant estate around this public square. The case of the Brooklyn Park Commissioners *v.* Armstrong, 45 N. Y., 234, is relied on for an authority for selling this public square. That case was decided upon the authority of a special statute. In that case, the city of Brooklyn acquired title to the park by exercise of eminent domain, and held in trust for the public until 1870, when by an act of the Legislature the city was authorized to sell and convey certain portions of the land, which relieved the city from the trust to hold it for a use only. (Id., 243.)

Ordinarily, where land is condemned for a special purpose

on the score of public utility, the sequestration is limited to that particular use; but in Brooklyn *v.* Armstrong, the fee was taken and the owner paid its true value; hence, by legislative sanction, it may be sold.

Again, the city of Brooklyn was not the grantor of the neighboring owners. (Id., 245.) · But in this case Lamar county was the grantor of appellees and those under whom they hold, and for this reason the case above referred to cannot be relied on as authority in the case now before the court. (See Commonwealth *v.* Rush, 14 Penn., 186 ; Price *v.* Thompson, 48 Mo., 363.)

MOORE, ASSOCIATE JUSTICE.—Where a dedication to public use is sought to be established from the acquiescence of the owner in the use of the property by the public, or from acts or declarations of an equivocal character which are consistent with a dedication to public use, or from the mere permissive use by the public for a temporary, though indefinite period of time, the intention of the owner in permitting such use is unquestionably of controlling importance in determining whether property has been dedicated by the owner to public use or not. (Dillon on Mun. Corps., secs. 498, 499 ; Irwin *v.* Dixion, 9 How., 30 ; Manderschid *v.* City of Dubuque, 29 Iowa, 73.)

But where the dedication is clearly manifested by unequivocal acts or declarations, upon which the public, or those interested in such dedications, have acted, the fact that the owner may have entertained a different intention from that manifested by his acts or declarations, is of no consequence. It has been repeatedly held by this court, as well as by many others, that where the owner of land lays out and establishes a town, and makes and exhibits a map or plan of the town, with streets and public squares, and sells the lots with reference to such plan, the purchasers acquire, as appurtenant to their lots, all such rights, privileges, easements, and servitudes represented by such map or plan to belong to them, or to

their owners; that the sale and conveyance of lots according to such map implies a grant or covenant, for the benefit of the owners of the lots, that the streets and other public places represented by the map shall never be appropriated by the owner to a use inconsistent with that represented by the map, on faith of which the lots are sold, and especially so where the use to which the owner proposes converting them tends to lessen the value of the lots thus sold. (Oswald *v.* Grenet, 22 Tex., 94; Preston *v.* City of Navasota, 34 Tex., 684; Huber *v.* Gazley, 18 Ohio, 18; City of Logansport *v.* Dunn, 8 Ind., 378; Beatty *v.* Kurtz, 2 Pet., 566; Rowan *v.* Portland, 8 B. Monr., 232.)

The charge of the court is fully sustained by these decisions. It therefore follows that it did not err in refusing to instruct the jury, that to constitute a dedication to public use, the county of Lamar must have actually and in fact intended to dedicate the property in question to the use of the purchasers of the lots contiguous to it, or to the citizens of the town, as contradistinguished from its dedication or reservation for a public purpose, as a public square for a court-house, for which it was the duty of the county to provide. Such an instruction was not called for, and would have in no way tended to enlighten the jury, or lead to a proper determination of the case, but would have more probably misled them.

Nor did the court err in refusing to instruct the jury, that "A dedication of property public use occurs when the owner abandons the us pancy, and control of such property to the publi cation may be made by any means which clear¹ intention on the part of an owner to give up and surrender the use of the same to the public." This instruction as asked might no doubt be appropriate in many cases; but it was not called for here; and, from the manner in which it is drawn, it was calculated, if not designed, to lead the jury to infer, that in order to dedicate property to public use it was necessary in all cases that the owner should entirely abandon all use, occupancy,

and control of such property. Unquestionably, this is not in all cases essential to constitute a public use. In many instances, such total abandonment would not only be inconsistent, but often absolutely destructive or greatly detrimental to the enjoyment of the use intended to be secured to the public; as, for instance, the use of streets, and the enjoyment to be derived from public parks and gardens.

Nor does it follow, because the property is dedicated to a use which it is the duty of the owner to provide, but which is also essential to the public, and beneficial to the purchasers of contiguous lots, that after the property has been dedicated to such use, and individuals have made investments on the faith of such dedication, it can be converted, to their injury, to an entirely different and inconsistent use. For example, where land has been given to a county to be laid out for a town for a county site, until the town thus established is incorporated it is certainly the duty of the county to see that it has necessary streets, or public highways, as well as to make provision for a court-house. But would it be insisted, that, after lots have been sold by reference to a map or plat showing such streets, the county could appropriate the ground occupied by them, without the consent of the citizens of the town, and to the detriment of the owners of particular lots, to some other inconsistent purpose? If not, how can it be said, if lots on a particular square are sold and conveyed in view of its dedication as a public square for a court-house, that the county may convert such public square, to the detriment of purchasers of such lots, into private and individual property? It is a matter of common knowledge, that lots contiguous to public squares thus used are esteemed as much more valuable than similar lots not thus situated; and the evidence shows that lots on this square sold for more than four times the amount which similar lots in the same block commanded, simply from the fact that they fronted upon this square.

Certainly, then, it can make no difference, as regards the

owners of these lots, whether it is said that this square was dedicated to public use, for building upon it the court-house, or dedicated as a public square in which a court-house for public use should be built, or that it was reserved for like purpose. (Commonwealth *v.* Rush, 14 Penn., 186; Le Clercq *v.* The Trustees, &c., 7 Ohio, 218; Brown *v.* Manning, 6 Ohio, 298; Town of Lebanon *v.* The Commissioners, 9 Ohio, 80.)

If the owner of land indicates by the map, or by other unequivocal acts or declarations, that a particular lot or square is to be reserved or applied to a particular or specific use of a *quasi*-public character, and such as to induce purchasers of contiguous or neighboring lots to give a higher price than they otherwise would, the use to which such lot was to be appropriated would no doubt be a reservation, and not, strictly speaking, a dedication to public use. But, nevertheless, the difference, so far as the owners of lots purchased on the faith of such reservation are concerned, is merely nominal; for the owner of the property who thus sells it is estopped from appropriating the lots or square so reserved to a purpose inconsistent from that for which it was reserved; or he will be held to have by such sale created a servitude in the property reserved, in favor of the dominant estate which he has conveyed, which will prevent his applying the reserved property to any other use than that for which it was reserved. (Harrison *v.* Boring, 44 Tex., 255.)

We need not say—for the court did not hold, and appellees do not claim—that the dedication or reservation of the property did not prevent the county from removing the court-house to any other locality. The right to change the locality of its court-house whenever public interest may demand it, is a political right, of which the people cannot be estopped or deprived by the action of the County Court, whenever they see fit to do so in the way pointed out by law. But while the county of Lamar cannot estop or bind

itself, by the dedication or reservation of a particular square for this purpose, not to remove the court-house of the county to some other locality, it can certainly estop or preclude itself from making use of property thus dedicated or reserved for an altogether different and inconsistent purpose, and such as obviously tends to the injury of those who have purchased lots upon the faith of such dedication or reservation.

There is no error in the judgment, and it is affirmed.

                                                        AFFIRMED.