R. M. CLEMENT ET AL. V. CITY OF PARIS ET AL.

No. 2511. Decided April 21, 1915.

**1.—Dedication—Public Square—Diversion from Purpose.**

A county, having acquired land for a site for its county seat, by act of its commissioners laid out thereon a town by a plat showing a space marked "public square" and sold off lots fronting thereon. Held that such acts constituted a dedication as a public square of the land so designated, irrespective of any act by the one donating the land to the county as a county site and providing by such dedication or his conveyances in pursuance thereof that such ground should be laid off by the county as a court house square; and that the owners of lots fronting same, and holding under their conveyance by the county as laid off and abutting thereon could restrain the diversion of it to other purposes rendering their lots less valuable.  (Pp. 202-205.)

**2.—Same—Same—Same—City Public Comfort Station.**

The use of property dedicated by the county as a public square in its county seat for the erection of a permanent building by the city as a "public comfort station," involving beautifying and enclosing such ground so as to prevent passage of vehicles and use by the public as a place of public resort, trade and traffic, was such diversion of it to purposes other than that to which it was dedicated as could be enjoined by the owners of business lots abutting on the square and bought with reference to such location, whose property would thereby be rendered less valuable.  (Pp. 205, 206.)

Question certified from the Court of Civil Appeals, Sixth District, in an appeal from Lamar County.

*Moore & Park, Burdett & Connor,* and *Long & Wortham,* for appellants.—The public square having been thus dedicated by the county, through its commissioners, as a "public square," with right reserved in the county to make use of it for court house purposes, the county was restricted to that right. In view of its dedication as shown, the city could not, even by legislative authority, exercise over the square a control inconsistent with the use for which it was dedicated. Llano County v. Knowles, 29 S. W., 549; Compton v. Waco Bridge Co., 62 Texas, 715; State v. Travis County, 85 Texas, 441; Elliott on Roads and Streets, p. 959, sec. 875; 28 Cyc., 936; Oswald v. Grenet, 22 Texas, 94; City of Chicago v. Ward, 160 Ill., 392, 61 Am. St., 195; O'Neil v. City of Sherman, 77 Texas, 184; Le Clereq v. Trustees of Gallipolis, 7 Ohio, 217, 28 Am. Dec., 641; Lamar County v. Clements, 49 Texas, 347; County of Harris v. Taylor & Gabel, 58 Texas, 695; City of Llano v. Llano County, 5 Texas Civ. App., 132, 23 S. W., 1012.

*Wright & Patrick,* for appellees.—The words "Public Square" marked on a map means an unrestricted dedication of the portion so marked to public use and in absence of pleadings showing fraud or mistake parol evidence can not be received to add to or restrict the meaning. Sanborn v. City of Amarillo, 42 Texas Civ. App., 115, 93 S. W., 474; Miller v. City of Indianapolis, 123 Ind., 196; Rhodes v. Town of Bridgeport, 145 Ind., 21; B. & O. S. W. Ry. v. City of Seymour, 154 Ind., 17; Strink v. Prit-

chett, 27 Ind. App., 582; Guttery v. Glenn, 201 Ill., 225, 66 N. E., 305; DeWitt County v. Clinton, 194 Ill., 521, 62 N. E., 780; Rhodes v. Town of Brightwood, 145 Ind., 21, 43 N. E., 942; Baker v. Johnston, 21 Mich., 319; Seguin v. Ireland, 58 Texas, 186; State v. Travis Co., 85 Texas, 441, 21 S. W., 1029; Jacksonville v. Jacksonville Rd., 67 Ill., 640; Dillon Mun. Corp., fifth ed., sec. 1097; State v. Commissioners, 3 Hill, 149; C. R. I. & P. R. R. Co. v. City of Joliet, 79 Ill., 25; Clement v. City of Paris, 154 S. W., 624.

If the dedication was unlimited for public purposes, the abandonment of the use of the same by county for a court house, would not preclude the use of the square by the City of Paris or Lamar County either, for any other public purpose and the city, when incorporated, would succeed to all the rights of the county in and to same, and the use contemplated by the city being a general public use, abutting property owners could not complain. Dillon Mun. Corp., vol. 2, sec. 629, and note; 28 Cyc., 149, notes 83-84; 13 Cyc., 439; Almand v. Atlantic ·Con. St. Ry., 108 Ga., 417, 34 S. E., 6; Ham v. Dadeville, 100 Ala., 199, 14 So., 9; Llano v. Llano Co., 5 Texas Civ. App., 132, 23 S. W., 1008; Galveston v. Menard, 23 Texas, 349; Seguin v. Ireland, 58 Texas, 183; 28 Cyc., 936; Pettitt v. Macon, 95 Ga., 645, 23 S. E., 198; Railway Co. v. Joliet, 79 Ill., 25; Gas Co. v. Railway Co., 91 Iowa, 470, 59 N. W., 292.

Public square may be improved and beautified by buildings, parking and other means and used as common park for pleasure and recreation. 28 Cyc., 936, 938, 614, 615, 621; Riggs v. Detroit, 27 Mich., 262; Sachs v. Towanda, 79 Ill. App., 439; Illinois v. Railroad, 33 Fed., 730; Dillon Mun. Corp. (fifth ed.), vol. 2, secs. 1096-1097.

Mr. Justice PHILLIPS delivered the opinion of the court.

The case concerns the power of the City of Paris, as a municipality, to make certain use of the original public square in the city, the subject of a former similar controversy passed upon by this court a number of years ago. Lamar County v. Clements, 49 Texas, 347.

Three questions are propounded for our determination by the honorable Court of Civil Appeals with respect to its holding upon the action of the trial court in sustaining the city's exception to the plaintiffs' petition, answers to the second and third questions being requested only in the event of our holding that the Court of Civil Appeals erred in its disposition of the first.

The certificate, as it relates to the first question, is as follows:

"R. M. Clement and others, as owners of lots abutting on the streets that surround and front on the 'public square' of the City of Paris, Texas, and as citizens of Paris, instituted this suit in the District Court of Lamar County, seeking to enjoin the City of Paris, its mayor and members of the city council from erecting upon the public square of that city certain buildings, structures and obstructions fully set out and described in the original petition. Among other defenses interposed by the defendants in the trial court were certain exceptions general in their

nature, but directed to distinct portions of the plaintiffs' petition. Some of these exceptions were sustained by the trial court; and upon refusal of the plaintiffs to amend, the court dismissed the suit; and from the judgment of dismissal this suit is prosecuted. At a former day of this term the appeal was considered and the cause reversed and remanded because a majority of the court were of the opinion that the trial court erred in sustaining the exceptions to the first count in the·petition. In due time a motion for rehearing was filed, and the cause is now pending before us on that motion. Entertaining some doubts as to the correctness of our holding in the original disposition of the case, we deem it now advisable to certify to your Honors the questions which will be hereinafter specially set out. We deem it advisable, however, in this connection to expressly state that we are not confining ourselves merely to certifying the questions about which members of this court have disagreed, but we desire the opinion of your Honors as to the correctness of our holdings upon those questions about which there is no disagreement but concerning which we now have some doubts. We herewith copy in full the original petition and its exhibits in the latter portion of this statement.

"The plaintiffs' original petition contained in its introductory part the following language: 'They allege that on, to-wit, about the......day of............1841, George W. Wright, who then resided in Lamar County, Texas, but who is now deceased, being then the owner of the tract of fifty acres of land below mentioned, and being desirous of securing on his land the county site of Lamar County, where it now is, did donate to Lamar County fifty acres of land for that purpose, being a part of the Larkin Rattan Headright, *with the then understanding and agreement with the County Commissioners acting for and on behalf of Lamar County that said donation should be accepted for the purpose aforesaid, subject to the condition that an open square should be laid off in the center of said fifty acres and dedicated for the use of the county and the public for the sole purpose of a County Court House and an open space around it forever.*'

"The following exception or special demurrer was interposed and sustained by the court, to-wit: 'To all that portion of plaintiffs' petition beginning with the word "with" immediately following the words "Larkin Rattan Headright" and ending with the word "forever" (which is quoted above and in italics), and all other portions of the·petition seeking to engraft conditions and limitations not expressed in the bond for title and deed of G. W. Wright, for the following reasons: The same is contradicted by the terms of the bond for title and deed from G. W. Wright attached to the petition and marked exhibits "B" and "C," and is an attempt to vary the terms of those instruments and engraft conditions on same without showing any facts authorizing same, and that any such agreement or contract or exception between G. W. Wright and the commissioners was wholly null and void because beyond the powers of the commissioners to make same.'

"This court treated that exception as being a general demurrer to the first count of the appellants' original petition, in which an express dedication was pleaded and relied on, and a majority of the court held that the trial court erred in sustaining that exception or special demurrer."

The first question propounded by the Court of Civil Appeals in respect to this ruling is:

"Did the majority of the court err in so holding?"

As is therein stated the certificate incorporates by reference the plaintiffs' petition and its exhibits. Because of the length of the petition we will here state the substance of its allegations.

The first count in the petition presents the claim that the lots of the plaintiffs abutting upon the public square, with the buildings thereon, have a special or additional value because of the nature and use of the square and their situation upon it; and that the plaintiffs and their privies and estate were induced to and did pay additional prices for the lots upon that account and because of the use to which they allege the square had been permanently dedicated at the time of their purchase. In relation to this dedication, following the allegation quoted in the certificate, it is pleaded that George W. Wright on August 24th, 1841, after his donation of the fifty acre tract for the purposes of the county site, executed to the commissioners his bond for title, and that they accepted the trust; and thereafter Wright executed and delivered to them a deed of the fifty acre tract. That the commissioners thereupon laid off the tract into lots, blocks, alleys and a square, in accordance with the terms of the donation and dedication, naming the town, "Paris," which became and is the county site of the county; a copy of the plat of the original county site, to the extent that it affects the property of the plaintiffs, being made a part of the petition and showing particularly the square referred to and the property of the plaintiffs fronting upon it; that across the square shown on the original plat were written the words, "Public Square," but it was at the time understood and agreed between Wright and the commissioners that the square so marked was to be used for the purpose of a county court house and for an open space for free ingress and egress of the public and for convenience of traffic and for other purposes. That after the fifty acre tract was so laid off, Lamar County, by its commissioners, advertised the lots fronting on the square for public sale, and they were publicly sold for the use of the county for the purpose of raising funds with which to erect a court house on the square; that at and before the sale the square was laid off for the benefit of the public for court house purposes, and was so dedicated and intended to be so irrevocably dedicated; that the square was laid off 216 feet square, with a street 60 feet in width on each side of it; that the commissioners announced that it was laid off for the benefit of the public for court house purposes and was so dedicated, at and before the time of the sale, and at that time exhibited the above mentioned plat showing

the square and its surroundings, which had been duly recorded in the deed records of the county; and the purchasers of the lots abutting upon the square bought them with reference to the plat and on the faith of the square being used alone for court house purposes.

That pursuant to such dedication the commissioners caused to be erected upon the square a brick court house in its center, where it remained until the year 1877, when it was burned; that the court house was used for that purpose until the year 1874, when the county acquired a lot elsewhere upon which it erected a new court house now in use. That ever since the year 1844 the public has had free access over and across the square, and up to 1874 and 1877 for the use of the county for court house purposes; and that the plaintiffs hold the title to their lots fronting on the square under the original sale made by the commissioners of the county, above recited.

That ever since the fire, in 1877, the square has been left open with free access to all parts of it, and has been used by the public on which to ride and drive, and for the sale of farm and other products, and for trade and traffic generally. That the improvements upon the lots of plaintiffs consist of costly buildings, induced by the dedication and use of the square and the peculiar advantages which the property possesses on that account.

The use of the square, which it was the purpose of the suit to enjoin, was its being made the site of a building, called a "Public Comfort Station," proposed by the city authorities to be erected in its center, and to occupy a circular space not exceeding 100 feet in diameter. The petition sets out the ordinance of the city council authorizing the erection of this building, a permanent brick structure, to cost not exceeding $10,000.00 with an exhibit hall on the first floor to be devoted to the exhibition of farm and other products of the county, and, with other parts of the building, for the location of memorial tablets, busts, and historical relics; the lower floor also to contain toilet rooms and lavatories for whites and blacks. The second floor, it is provided by the proposed ordinance, shall contain a ladies' parlor, ladies' rest room with dressing room and toilet room; two sick chambers, also a gentlemen's waiting room and combination room, commodes, lavatories, etc.; provision being also made in the ordinance for the maintenance and administration of the building.

In this connection it is alleged that the city authorities intend to build and maintain walks around the proposed building, with flower beds along the walks, and with a curb, fence or railing around the grounds, preventing the passage of vehicles, and that such use will constitute an appropriation of the square to a use altogether inconsistent with that to which it was dedicated and has been used by the public for more than thirty years, with the knowledge and consent of the county, resulting in a continuous exclusion of the public from the enjoyment of the square for the purposes to which it was originally dedicated, and consequent injury to the plaintiffs and their property.

George W. Wright's bond for title simply describes the fifty acre tract by metes and bounds, and as being the tract on which the commissioners in whose favor the bond is made, had laid off "a town under the name of Paris." His deed describes the tract in the same way. It contains, however, a reservation to the grantor of certain lots "as designated on the plat of said town of Paris." The copy of the original plat of the town referred to in the petition as having been made by the original commissioners, attached to the petition, shows the space of ground, 216 feet square, bounded by four streets, with abutting blocks and lots, and designated on the map as "Public Square."

The petition is clearly sufficient, in our opinion, as a pleading that at the inception of the town of Paris the square in question was dedicated to a particular public use, namely, the public square of the county site of the county, to serve as the location for the county court house and as a public square in that connection. The original and supplementary acts of the Congress of the Republic in that relation empowered the commissioners therein charged with the duties conferred with respect to the location of the county site of Lamar County, "to lay out a town, sell lots, contract for public buildings, and do all things necessary for the promotion of the interests of the county." This invested the commissioners with the authority to select and designate a site for the court house, and for the public square then and now commonly used in this State in that connection, and to dedicate the plot of ground so selected to that particular use, as an essential part of the duties imposed upon them by the acts. The petition charges that the commissioners did so select and dedicate this particular square for that purpose. Entirely apart from the acts of Wright, the donor of the tract of land for the county site, his donation, his bond for title and his deed, it sufficiently avers such a dedication by the commissioners themselves, in their agreement with Wright to that effect, their preparation and record of the original town plat with the square designated thereon, their public announcement of its purpose, and their sales of lots on the faith of such location and public use; all of which could be competently shown in evidence as constituting the dedication pleaded.

If the square was thus dedicated to such particular public use, it is impressed with a character of public trust in the hands of the city, which holds the legal title; and it is beyond the power of the city officials to appropriate it for a different public use entirely inconsistent with the use originally intended, to the injury of those who have purchased abutting lots upon the faith of such dedication. It may be used only in ways that are kindred to those which would obtain under such a dedication at that time. Lamar County v. Clements, 49 Texas, 347; Seguin v. Ireland, 58 Texas, 183; County of Harris v. Taylor, 58 Texas, 690; City of Victoria v. Victoria County, 100 Texas, 438; City of Llano v. Llano County, 5 Texas Civ. App., 132, 25 S. W., 1008; Codman v. Crocker, 203 Mass., 146, 25 L. R. A. (N. S.), 980, 89 N. E., 177.

The question then arises: Is the use, which it is pleaded the city

officials propose to make of the square, inconsistent with that to which it was originally dedicated? We think it is. It is well known that an open space of ground of this kind largely takes its character from the structures upon it and the uses to which the latter are put. The purpose of a public building of a prominent nature in the center of such a square come in time to dominate the uses of the square itself. There is no kinship between a county court house and a public comfort station. And in our judgment a square serving as the site and in part the grounds for such a structure would in actual experience soon lose its character and use as an open and public place devoted to public resort, trade and traffic, common, as is generally known, to the court house squares of the State, and other like places impressed with a similar use.

The first question is accordingly answered in the negative, which, under the certificate, renders the determination of the other questions unnecessary.

Chief Justice Brown having been of counsel in Lamar County v. Clements, did not sit in the case.