**GRIFFITH et al. (MILLER, Intervener) v. ALLISON et al.**

No. 9019.

Court of Civil Appeals of Texas. San Antonio.

May 10, 1933.

Rehearing Denied June 7, 1933.

R. T. Pritchett, Boone & Raymer, and Allen V. Davis, all of Corpus Christi, and Knox Miller, of San Antonio, for appellants.

Kleberg & Eckhardt and John C. North, all of Corpus Christi, for appellee.

FLY, Chief Justice.

This is an action instituted by F. R. Allison, L. Kaffie, W. F. Harris, Amelia Meuly, and Amanda Meuly against C. D. Ardussi, L. B. Griffith and wife, Illse Griffith, C. G. Sanford and wife, Lucile Sanford, M. C. Gann, and W. E. Pope, to obtain a perma-nent injunction to restrain appellants from in any manner interrupting or interfering with the free use of a certain park described in the petition. The Meulys withdrew from the suit.

The cause was tried, without a jury, by the court and an injunction was granted as to L. B. Griffith and wife, C. G. Sanford and wife, M. C. Gann, and W. E. Pope, restraining them from interfering with the use of the park, and commanding them to remove all fences and obstructions placed by them in said park.

Knox Miller was an intervener in the suit, and is one of the appellants. W. E. Pope sought a recovery against Knox Miller but it was denied, and the intervener was denied a recovery against parties brought into the suit by him. The injunction was not granted as to Knox Miller.

The testimony showed that the park, Ocean drive, the parkway, and other streets described in the petition were dedicated many years ago to the public use by the then owner of the lands and that appellees and the general public had a right to use of the same.

We think the findings of fact of the trial judge are sustained by the facts and they are adopted as the conclusions of fact of this court, as follows:

"By deed dated July 17, 1889, filed for record October 23, 1889, E. H. Ropes conveyed to Port Aransas Company, a corporation, certain land described as blocks and parts of blocks of land laid down upon a map entitled 'Map of Port Aransas Cliffs Nueces County, Texas,' and including 'a strip of land 300 feet wide upon the avenue lying between the easterly line of Block 4 to 21 inclusive and the waters of Corpus Christi Bay, as the same appears upon said map said strip being about 3 miles in length and the same to be used exclusively for a free public park and pleasure ground for the people and to be under the exclusive care of said Port Aransas Company. If the said company or any other corporation or corporations or person or persons shall ever divert such proposed park to any other uses whatsoever then so much of such park as is so diverted shall revert to myself or my legal representatives.'

"A map of Port Aransas Cliffs showing a strip of land along the front bordering Corpus Christi Bay, designated by the word 'park' was filed for record October 14, 1889, indorsed thereon as follows: 'The within and accompanying plat represents the blocks, lots, streets, avenues, boulevards, walks and parks of the subdivisions called Port Aransas Cliffs, lying between the south boundary line of the city of Corpus Christi and the north boundary line of Ensinal pasture fronting on Corpus Christi Bay and having a

depth of one mile and is the plat by which said lots are hereafter to be conveyed and held.

" 'Witness my hand this 2d day of September, 1889, signed E. H. Ropes and Matt Dunn'—

"which map is recorded on page 27, in plat Book A, of the Plat Record of Nueces county, Tex.

"E. H. Ropes, about the times referred to above, had C. H. von Blucher, an engineer, to make a map of Port Aransas Cliffs, which differs from the recorded map in that directions and distances are given in more detail and the strip of land along the bay is designated by the words 'private park.'

"Numerous deeds passed from Port Aransas Company to purchasers of lots and blocks in Port Aransas Cliffs, referring for description to a map filed for record, and plaintiffs, or some of them, by mesne conveyances hold title to some of such lots.

"Intervener, Knox Miller, holds warranty deed from F. A. Quaile and A. C. Swanson to ——— acres of such park, bought by him from them for $——— per acre."

■ It may be true, as claimed in the first and sixth assignments of error, which form the basis of the first proposition, that appellees had been trespassing upon and using the park for their own private purposes to the exclusion of the public. We do not think that fact would preclude them from applying for equitable relief to protect the rights of the public as well as the rights they might have as members of the public. The maxim that "he who asks for equity must come with clean hands" has no application to a citizen, no matter how much he may have soiled his own hands, who asks for and obtains equitable relief against the invasion of public rights. If appellees have been guilty of invading the rights of the public in the park, they seem to have recognized the error and vice of their ways and have washed their hands of the guilt and cannot be denied the right, as citizens, to ask for equitable relief for themselves and the public, against those who will not acknowledge the error of their ways but are setting up a claim to public property, and showing a determined persistence in depriving the people of the park which was dedicated to them many years ago. Appellees are not claiming any personal rights in the park, but are claiming only rights accruing to them as members of the public. Their former offenses and derelictions cannot be used to prevent justice to the public. 1 Pom. Eq. Jur. § 399. A prior trespass by the person invoking the aid of equity cannot preclude him from enjoining the trespasses of another. Williams v. Beatty, 139 Mo. App. 167, 122 S. W. 323.

■ The second, third, fourth, and fifth propositions in the brief assail the sufficiency of the testimony to show a dedication, and, if it did, it also shows a disregard of the dedication by those interested and a renunciation of the dedication by the man who made the dedication. The evidence, as found by the trial judge, showed a dedication of the park, parkways, and drives, and numbers of lots had been sold with reference to the dedication to numerous purchasers, and the original owner nor any one else could withdraw and destroy the dedication. As to the dedication, the courts of Texas sustain the dedication made in the following cases: Lamar County v. Clements, 49 Tex. 347; City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924; North Texas Trust Co. v. Brittson (Tex. Civ. App.) 279 S. W. 892. The doctrine is stated thus in the Lamar Co. v. Clements Case:

"It has been repeatedly held by this court, as well as by many others, that where the owner of land lays out and establishes a town, and makes and exhibits a map or plan of the town, with streets and public squares, and sells the lots with reference to such plan, the purchasers acquire, as appurtenant to their lots, all such rights, privileges, easements, and servitudes represented by such map or plan to belong to them, or to their owners; that the sale and conveyance of lots according to such map implies a grant or covenant, for the benefit of the owners of the lots, that the streets and other public places represented by the map shall never be appropriated by the owner to a use inconsistent with that represented by the map, on faith of which the lots are sold, and especially so where the use to which the owner proposes converting them tends to lessen the value of the lots thus sold."

After private rights have attached, the owner cannot revoke a dedication. Dillon Mun. Corp. Vol. 3, § 1091.

■ The word "park" written upon a map of a block of land is as full a dedication as though put into language, and all rights therein are secured to those purchasing with a view to said map. Dillon Mun. Corp. §: 1096.

■ The facts show a full and absolute dedication of the park and ways and drives. It was stated in terms that the land was dedicated for a park and driveways and it was designated on the map by which sales were made, and that dedication could not be destroyed by any subsequent map on which the word "private" was written above the word "park."

■ The sixth proposition is overruled. The pleadings and evidence were sufficient to sustain the judgment. It was unnecessary for appellees to allege in detail how

taking possession of a park damages the adjacent property. It was apparent.

The seventh proposition is overruled. The lots were sold with reference to the original map. It was so indorsed on the map. The map was on record.

The eighth proposition is without merit and is overruled. There is no evidence of bad faith on the part of appellees in prosecuting the suit. Whatever their motives may have been, the suit inured to the benefit of the general public and protected them from the unlawful seizure of their park and streets, by those who had no right or title in them. Appellees, whatever their motives, became public benefactors.

What has been said in regard to the other appellants applies with equal force to Knox Miller, who claimed title to a part of the park through deeds made to him. Of course, under the dedication they had no title in the park which they could convey.

[12] There is no force or merit in the propositions of M. C. Gann. The propositions are multifarious in their terms and present nothing which tends to show that the property was not dedicated and that they had acquired title to any part of it. The repudiation by the commissioners' court of the dedication of the park and drives could not in the least affect the rights of purchasers under the map or of the general public. The dedication rights had accrued and the commissioners' court had nothing to do with the park or the streets and drives. It was a mere impertinence on their part in attempting to destroy the rights of purchasers and the general public.

The judgment is affirmed.