## MILLER et al. v. DALLAS COUNTY et al.
### No. 11459.

Court of Civil Appeals of Texas. Dallas.
April 21, 1934.

Rehearing Denied May 19, 1934.

Roy C. Ledbetter, of Dallas, for appellants.

Robert L. Hurt, J. Hardy Neel, and L. S. Stemmons, all of Dallas, for appellees.

LOONEY, Justice.

The land in controversy is a strip 200 feet wide, situated without the limits of the city of Dallas, but within the boundaries of the City and County of Dallas Levee Improvement District, and is an extension of Cadiz street from the Cadiz underpass, constructed by the city, to the Cadiz viaduct, constructed by the county, that spans the new floodway.

We deem it sufficient to say that the pleadings present a controversy between the county of Dallas and the Industrial Properties Corporation (whose rights are practically identical), on the one side, and Royal C. Miller, his sister, Mrs. Emma Miller Exline, and her husband, A. L. Exline, joined pro forma, on the other. Appellees contend that they own an easement in the strip of land for street and road purposes, dedicated by appellants, and that appellants are estopped to obstruct or use any part of the land in any manner other than for highway purposes, and to that end appellees sought permanent injunctive relief. Appellants answered by demurrer, denials, and pleas of not guilty. Trial was had without a jury, resulting in judgment in favor of appellants for the land (1.434 acres), but subjecting it to an easement in favor of appellees and decreeing the injunction sought, from which this appeal was prosecuted.

The propositions urged by appellants for reversal may, in our opinion, be reduced to the simple contention that the facts are insufficient to sustain the judgment.

The land in question was a part of 326.5 acres, owned by appellants, situated without the city limits, but within the boundaries of the City and County Levee Improvement District, which was created on April 3, 1928. Anticipating the creation of the improvement district, engineers representing the county, the city, and the improvement district, worked out a cooperative plan for improvements, which comprehended the building of the Cadiz street underpass, the extension of Cadiz street from the city limits through the reclaimed land to the Cadiz viaduct, which spans the floodway from the east to the west levee. On January 24, 1928, Royal C. Miller submitted to the city of Dallas the following: "Owners of property donating 200 foot strip for boulevard and parkway across their land, same to be an extension of Cadiz Street, as proposed by the City, are willing to donate same on the following conditions. First. That levee assessment be assumed or taken care of by the City or County, as to this 200 foot strip, in proportion to the assessment on the remaining tracts adjoining, of donors. Second. That the 200 foot given shall be used only for street and parkway purposes. Third. That the 40 foot concrete driveway along one side of the proposed parkway be built forthwith, and the other proposed 40 foot driveway on the other side of parkway be graded now but not paved, all as outlined by the City Plan. Fourth. That expense of paving and improving this highway and parkway is not to be assessed against adjoining property of donors. Fifth. That proper crossings through 70 foot parkway be provided for every 600 foot connecting the proposed driveways. Sixth. Provided that clearing, transplanting and grading be pushed to completion and that construction of concrete roadway be started immediately upon availability of funds voted at the recent bond election." This proposal was signed by Mr. Miller and approved by the city authorities in charge of the subject at that time.

Shortly after the above transaction, negotiations for the sale of the entire body of land by appellants to Bowman & Cravens of Austin, Tex., were begun. In these negotiations, the purchasers were represented by Mr. T. H. Harbin, who testified that Mr. Miller represented that the 200-foot strip had been dedicated for road and street purposes, that the land offered for sale would have a frontage on said street, and that these representations were repeated by witness to Bowman & Cravens, prior to the consummation of the sale, with recommendation that the land be purchased; but for Miller's said representations witness would not have recommended to Bowman & Cravens the purchase of the land, and if appellants are permitted to recover in the present action, the land conveyed to Bowman & Cravens will have no frontage on Cadiz street, as repre-

sented by appellants. This witness also testified that, pending negotiations, he had a conversation with Mrs. Exline, who, in the presence of her husband, said Mr. Miller (her brother) was handling the trade, and anything he did would be all right with them. On this point, Mr. Miller's testimony is to the effect that, in regard to the matters under consideration, he consulted with his sister, Mrs. Exline, acted for her as well as for himself. He also admitted that he probably told Harbin & Stemmons that an agreement had been given the city of Dallas to use the 200-foot roadway for the purpose of extending Cadiz street. Mr. D. L. Irwin testified that he helped to handle the sale of the land by appellants to Bowman & Cravens, and that Mr. Miller represented to him that the strip of land 200 feet wide had been dedicated to the city for the extension of Cadiz street, and that, while in Austin, he heard Miller represent to the purchasers that said roadway had been dedicated.

The sale of the land by appellants to Bowman & Cravens was consummated on March 15, 1928, the deed describing the 326.5 acres contains the following clauses, to wit: "The grantors herein expressly except from the land herein described that certain tract of land containing approximately two (2) acres heretofore sold and conveyed by the said grantors to the City of Dallas for the purpose of the extension of Cadiz Street * * *. The grantors (grantees) acquire the land herein conveyed subject to all existing easements held by the City of Dallas, County of Dallas, or other governmental agency or by public utility companies. The lands herein described are located in and constitute a part of the City and County of Dallas Levee Improvement District, and the grantees expressly assume all obligations to said City and County of Dallas Levee Improvement District." In regard to the strip of land excepted, as above shown, Mr. Miller being asked, "Was it your intention to reserve that property (the strip of land in controversy) to yourself and your sister?" answered, "No," having theretofore stated that, "My idea was solely to retain that 200 foot strip for the City of Dallas and the Corinth Street 60 foot roadway for that too."

On July 10, 1928, Bowman & Cravens conveyed the land to the Industrial Properties Corporation, of which L. A. Stemmons was president, who testified that Mr. Miller represented to him that a 200-foot right of way, for the extension of Cadiz street, had been granted the city, and that, had such representation not been made, he (Stemmons) would not have permitted the Industrial Properties Corporation to purchase the property. Subsequent to these transactions, the county asserted its jurisdiction over the highway, graded the entire 200-foot right of way, paved a driveway in its center 40 feet wide, and graveled from 20 to 25 feet on each side of the 40-foot pavement. In this status, appellants, on January 27, 1932, secured the adoption of a resolution by the city council of the city of Dallas, relinquishing all rights, if any, acquired by the city under the memorandum dated January 24, 1928, set out above.

■ The above statement gives the material evidence on which the trial court based its findings and conclusions, to the effect that the strip of land in question was dedicated by appellants for street and road purposes; that the county of Dallas and the Industrial Properties Corporation owned an easement therein; and that appellants should be perpetually enjoined from obstructing or using same in any manner other than for street and road purposes.

In our opinion, the findings and conclusions of the trial court are amply sustained by evidence, and are adopted as the conclusions of this court.

■ The contention is seemingly made that, as the original proposal for the dedication of the strip of land was made to the city, it alone was authorized to accept the dedication, or use the land for highway purposes; hence that neither the county of Dallas, nor the purchaser holding under appellants, acquired any rights under such proposal. Proof of the dedication does not rest alone on the proposal made to the city; there are other facts, that is, representations of appellants inducing sale of the land to Bowman & Cravens, recitations in the conveyance to said vendees, set out above; in fact, we are of opinion that proof of dedication is complete without reference to the proposal of January 24, 1928; therefore, do not deem it necessary to determine whether the conditions appended to the instrument donating the 200-foot strip to the city for the extension of Cadiz street are conditions subsequent, or mere covenants, or whether or not they were substantially complied with, because, as we view the facts, the clause in the conveyance by appellants to Bowman & Cravens, excepting from the body of land conveyed the strip in question, created an easement therein that passed as appurtenant to the land conveyed.

As we view the matter, the dedication was

for the benefit of the public and the land being without the limits of the city, the county alone was authorized to assert jurisdiction over it for highway purposes, which the evidence showed it did by having the land graded and paved.

In 14 Tex. Jur. 689, § 6, the following well-sustained doctrine is announced, to wit: "In every dedication the public is the real transferee of the use of the land and the only transferee necessary to the transaction, whether the dedication be effectuated through the medium of a conveyance to a county or city or to a private person, and whether no conveyance be made at all. And so, although the owner may make a dedicatory deed ostensibly to a city for the use of the public, the fact that the city has not yet come into being will not prevent the dedication from taking effect." So it seems that to accomplish a dedication to a public use, no particular formula need be followed, either in the dedication or in its acceptance by the public.

We think the cumulative effect of the evidence, that is, the original proposal to the city of January 24, 1928, the representations made in negotiating the sale of the land, the reservations in the conveyance to Bowman & Cravens, and the testimony of Miller that the reservations were not for the benefit of vendors, but solely to retain the 200-foot strip for the city of Dallas, evidence the intention on the part of appellants to dedicate the strip of land as an extension of Cadiz street, and furthermore, the facts show, just as unequivocally, that the public, for whose benefit dedication was made, acting by and through the county of Dallas, accepted the dedication and asserted jurisdiction over the property for highway purposes, by taking possession, grading, and paving same as an extension of Cadiz street.

In Oswald v. Grenet, 22 Tex. 94, 99, our Supreme Court used the following language in point: "A setting apart, or dedication to a public use, to be effectual, need not be by deed; nor need it be evidenced by the use of it having been continued for any particular time; it is enough, that there has been some clear, unequivocal act, or declaration of the proprietor, evidencing an intention to set it apart for a public use, and that others have acted in reference to, and upon the faith of, such manifestation of intention."

The record fails to disclose that appellants made any objection to the action of the county in taking possession, grading, paving and using the land for highway purposes. This is significant. In 14 Tex. Jur. 708, § 19, it is said: "The fact that the owner of land without objection permits the public authorities to grade, repair or otherwise improve a way over his property, in virtue of their control over public streets and highways, is cogent evidence that he intended to dedicate the way to the public * * *."

Prior to the consummation of the sale to Bowman & Cravens, appellants having represented that the parcel of land was dedicated for road and street purposes, that the body of land offered for sale would abut said street, and their conveyance to Bowman & Cravens expressly excepting the strip for the extension of Cadiz street, the vendees acquired an easement in the land for highway purposes, and being charged with such servitude, it follows that Industrial Properties Corporation, as vendee of Bowman & Cravens, acquired the right to have the highway maintained unobstructed; hence appellants were, and are, estopped to use the land in any manner inconsistent with its use as a highway.

The effect of decisions in point, announced in 14 Tex. Jur. 714, 715, § 24, is that: "Where a representation has been made to the public by the recording of a deed or map indicating that a portion of the land has been set apart for public use, a sale of the land or of any portion thereof—the purchaser taking in reliance on the implication of dedication contained in the description—constitutes such an act of acceptance as will estop the owner from denying an intention to dedicate. It is immaterial in such cases whether the sale was made by the original owner who recorded the plat or by his immediate or remote grantee. Nor is it material that the designated streets have not yet been thrown open to the public, or, if thrown open, that they have not yet been used by the public at large * * *."

The resolution adopted by the city council, on January 27, 1932, relinquishing all rights, if any, acquired by the city under the proposal of January 24, 1928, was an ineffectual and futile act. In a somewhat similar situation before the San Antonio Court, in Griffith v. Allison (Tex. Civ. App.) 60 S.W.(2d) 899, 902, Judge Fly used the following pertinent language; he said: "The repudiation by the commissioners' court of the dedication of the park and drives could not in the least affect the rights of purchasers under the map or of the general public. The dedication rights had accrued and the commissioners' court had nothing to do with the park or the streets and

drives. It was a mere impertinence on their part in attempting to destroy the rights of purchasers and the general public."

Finding no reversible error in the judgment below, it is affirmed.

Affirmed.