EUSTALIA G. RODRIGUEZ v. WOODMEN OF WORLD LIFE INSURANCE SOCIETY, SUCCESSOR TO SOV. CAMP, W. O. W.

No. 7576. Decided January 1, 1941.
Rehearing overruled January 29, 1941.
(145 S. W., 2d Series, 1077.)

44

*L. C. McLean, Kelley, Looney & Norvell,* all of Edinburg, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that applicant's answers to the question were untrue under the circumstances and the evidence offered, and that it also erred in holding that applicant was under observance in a hospital under the circumstances connected with the taking of an x-ray picture. Brown v. Palatine Ins. Co., 89 Texas 590, 35 S. W. 1060; Southwestern Life Ins. Co. v. Green, 101 S. W. (2d) 594; Pacific Mut. Life Ins. Co. v. Cunningham, 54 Fed. (2d) 927.

*Brown & Bader,* of Edinburg, for defendant in error.

Statements made in an application for insurance in a fraternal benefit society are expressly made warranties, and must be literally true regardless of their materiality. Brotherhood of Railroad Trainmen v. Wood, 79 S. W. (2d) 665; Sovereign Camp W. O. W. v. Newberry, 87 S. W. (2d) 839; Reppond v. National Life Ins. Co., 100 Texas 519, 101 S. W. 786.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

In the trial court plaintiff in error, Eustalia G. Rodriguez, as beneficiary in a benefit certificate issued by defendant in error to her. deceased husband, Eusebio Rodriguez, recovered judgment on such certificate against defendant in error in the sum of $1370, which amount included a penalty and an attorney's fee. The judgment was based upon findings of a jury in answer to special issues.

In his application for the benefit certificate Eusebio Rodriguez made answers to certain questions. One such question was as follows: "Have you ever been under observation, care or treatment in any hospital, sanitorium, asylum or similar institution?" His answer was "No."

Special Issue No. one submitted to the jury was as follows:

"Do you find and believe from a preponderance of the evidence that Eusebio Rodriguez was ever under observation in any hospital prior to the date of his application for insurance on June 2nd, 1934? Answer 'Yes' or 'No'."

Special Issue No. two differed from Special Issue No. one in the particular only that the inquiry was whether he had

ever been "under care in any hospital," instead of "under observation in any hospital." Special Issue No. three was like the foregoing except that the inquiry was whether he had ever been "under treatment in any hospital." All of such issues were answered "No". The Court of Civil Appeals concluded that it was established by undisputed evidence that the deceased had been under observation in a hospital, and, upon such conclusion, reversed the trial court's judgment and rendered judgment that plaintiff in error take nothing. 125 S. W. (2d) 1069.

It appears that the deceased was employed by Texas Gulf Sulphur Company at Newgulf, Texas. The company provided a hospital and employed two doctors for the benefit of its employees, the doctors maintaining their offices in the hospital building. The evidence upon which the conclusion of the Court of Civil Appeals was based consisted alone of the testimony of Mrs. Rodriguez, and was stated by the Court of Civil Appeals in its opinion as follows:

"Appellee, Eustalia G. Rodriguez, testified in effect that either in the latter part of 1928, or the early part of 1929, her husband, Eusebio Rodriguez, was suffering with pains in his stomach and went to the offices of Dr. Bomar and Dr. Giddings for the purpose of finding out what his trouble was and for treatment. Drs. Bomar and Giddings had their offices in the hospital at New Gulf. Dr. Bomar thought he had gas on his stomach and Dr. Giddings thought that he had malaria. It was decided that an X-Ray picture should be made. It was necessary for Eusebio Rodriguez to stay all night in the hospital so that he might be prepared for the taking of the picture. The next morning the X-Ray picture was taken in the hospital and Eusebio left. Eusebio did not lose any time from work. The doctors decided from the picture that there was nothing very seriously wrong with Eusebio, that he only had gas on his stomach and gave him something to relieve him from this trouble."

With reference to the finding by the Court of Civil Appeals that the doctors gave the deceased something to relieve him from his trouble, we find in the statement of facts evidence that a small bottle of black medicine was given the deceased, but when and where this was given him is not made clear. The X-Ray picture was made about seven o'clock in the morning and the deceased left the hospital about seven-thirty. We find no evidence that this medicine was given to him at that time.

██ It was stipulated between the parties that the defendant in error is a fraternal benefit society, as defined by the statutes of the State of Texas, and it is conceded by plaintiff in error that the answers made by the deceased in his application were warranties, and, further, that the provisions of Article 5043, R. C. S., have no application. That article provides, in substance, that misrepresentations in an application for a life insurance policy will not affect the policy unless same were material to the risk or actually contributed to the contingency or event upon which the policy became due and payable. What is conceded is that the above article does not apply to fraternal benefit societies, and that under the provisions of the certificate in this case the answers of the applicant were warranties. We therefore treat them as warranties. It does not follow, however, that in construing such warranties, the court may not resort to the well established rules for the interpretation and construction of contracts of insurance, for after all, the only concern is to ascertain the intention of the parties. In determining that intention one general rule for interpreting contracts of isurance requires that the terms employed be construed according to their popular and ordinary meaning, unless such terms have acquired a technical meaning in commercial usage, or unless it appears that it was the intention of the parties to use such terms in a technical sense. 29 Am. Jur., Insurance, Sec. 159.

32 C. J. p. 1150, Sec. 261, states the rule in this language:

"The words employed in a contract of insurance are to be taken and understood in their plain, ordinary, usual, and popular sense, rather than according to the meaning given them by lexicographers or persons skilled in the niceties of language, * * * * *."

That is the Texas rule. W. O. W. Life Insurance Society v. Dickson, 133 S. W. (2d) 243, (error dismissed, correct judgment) and the authorities there cited.

█ In the instant case the insured made an ordinary call upon the company doctors in their offices in a hospital building. That was more than five years before he made the application in question. He was detained there one night for the purpose of subjecting himself to an X-Ray exposure. He left the hospital by seven-thirty the following morning and lost no time from his work. There is no evidence that he was observed in the hospital that night. We are unwilling to hold or to approve a holding that under such facts the jury was not authorized to find that he was not under observation in the hospital within

the meaning of that phrase as employed in the contract. To spend a few hours in a hospital for the purpose of having an X-Ray picture made does not, as a matter of law, mean in ordinary parlance that one has been under observation in a hospital. It did not have that meaning to the jury in this case, and we cannot hold, as a matter of law, that it should have had that meaning and was not reasonably susceptible to any other.

In other issues the jury was asked whether the insured had been "under care in any hospital" or "under treatment in any hospital." Those issues were answered "No". The only evidence relied on to support the contention that, as a matter of law, he had been under care and under treatment in a hospital was that above set out, and what is written above applies equally to these issues.

■ By other special issues the jury was called upon to answer whether, within the five year period next preceding the date of his application, the insured suffered "any bodily disease" or any bodily infirmity" or whether, within that time, he consulted a physician for any disease or was attended by a physician for any disease. These issues were answered "No". As above stated, the incident of his visit to the hospital was more than five years before June 2, 1934, the date the application was signed. These issues were submitted to the jury because there was some evidence that he had consulted a physician and had been treated for a disease in 1931 or 1933. That evidence was disputed and therefore the question was one wholly for the jury.

The defendant in error insists in this Court that the judgment of the Court of Civil Appeals should at all events be affirmed, because there was not an iota of evidence to support the jury's answer to special issue No. 8. That special issue and the answer thereto were as follows:

"Do you find and believe from a preponderance of the evidence that Eusebio Rodriguez did, within the last ten years preceding the date of his application for insurance on June 2, 1934, have any disease? Answer 'yes' or 'no'. Answer 'No'."

The hospital incident above narrated occurred within the ten year period inquired about and the insistence is that, as a matter of law, the evidence discloses that the insured had a disease at that time. We cannot sustain this contention. It cannot be held, as a matter of law, under this record that the insured had a disease at that time. He had some pains in his stomach, but whether or not they were the result of a disease, as that

term was used in the application, is a fact question and not a law question. There is some opinion evidence that would support the conclusion that he was suffering from a disease at that time, but that is not conclusive of the question.

■ It is our opinion that by the special issues there were sub-mitted to the jury only questions of fact. The assignments brought by the insurance society to the Court of Civil Appeals did not present the question that the answers of the jury were against the great weight and overwhelming preponderance of the evidence, a question of which the judgment of that court is final. The assignments presented the question that the various answers of the jury were not supported by "an iota of evidence." It was also presented to that court that a peremptory instruction should have been given in favor of the insurance society, and that judgment should have been rendered in its favor non obstante veredicto. These are all questions of law of which we have jurisdiction. There is therefore no necessity for remanding this cause to the Court of Civil Appeals for further consideration.

It is accordingly ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court be affirmed.

Opinion adopted by the Supreme Court January 1, 1941.

Rehearing overruled January 29, 1941.