MILLER et al. v. DALLAS COUNTY et al.

No. 13113.

Court of Civil Appeals of Texas. Dallas.
Dec. 19, 1941.

Rehearing Denied Feb. 13, 1942.

McCombs & Andress, of Dallas, for appellants.

Dean Gauldin, Dist. Atty., H. Pat Edwards and Warren S. Cook, Asst. Dist. Attys., and Scurry & Scurry, and Robert H. Jones, all of Dallas, for appellees.

LOONEY, Justice.

This suit is a sequel to one brought by the County of Dallas and the Industrial Properties Corporation against Royal C. Miller, Emma Miller Exline and her husband, A. L. Exline, claiming an easement in, and to enjoin defendants from obstructing or using for any purpose other than as a highway, a strip of land, 200 ft. in width, situated without the limits of the City of Dallas, being part of an extension of Cadiz

Street from the underpass built by the City at its limits, extending to the Cadiz Viaduct (spanning the new floodway), built by the County; said 200 ft. strip having previously been dedicated to the public by the defendants for use as an extension of Cadiz Street. The trial resulted in a judgment recognizing that Miller and the Exlines owned title to the land in fee, but that same was burdened with an easement, in favor of the County of Dallas and Industrial Properties Corporation, for use as a highway, hence perpetually enjoined the owners from obstructing or using any part of the dedicated strip in any manner other than for highway purposes. On appeal, this court affirmed the judgment of the trial court (see Miller v. Dallas County, 71 S.W.2d 377), and writ of error was refused by the Supreme Court.

The present suit is by Royal C. Miller, Emma Miller Exline, joined by her husband A. L. Exline, against the County of Dallas, Industrial Properties Corporation, the Sportatorium, Inc., and W. T. Cox, to recover possession of all that portion of the 200 ft. strip theretofore dedicated by plaintiffs as an extension of Cadiz Street, not actually used by defendants for highway purposes; alleging that part of the strip had been abandoned since the finality of the judgment in the first suit, seeking recovery of the portion abandoned.

At the conclusion of the evidence, the case was submitted to a jury on special issues, resulting in a verdict in favor of all defendants except Dallas County, finding that the County had abandoned, for street and road purposes, a strip 50 ft. in width along the outer edges, that is, the north and south sides, of the 200 ft. strip previously dedicated by plaintiffs. Plaintiffs and all defendants, except Dallas County, moved for judgment on the verdict; the County moved for judgment non obstante veredicto. The court denied plaintiffs' motion, but granted the motions filed by the defendants, rendered judgment in their favor, the judgment in favor of the County being non obstante veredicto; to which, plaintiffs excepted, gave notice of and perfected this appeal.

Although the appeal was perfected as to all defendants, it is obvious that plaintiffs do not seek reversal as to the defendants, Industrial Properties Corporation, the Sportatorium, Inc., or W. T. Cox; hence the judgment as to them is affirmed, and their connection with the case will receive no further mention.

As stated by this Court in Draper v. Presley, 111 S.W.2d 1124, 1126, we repeat here that, "It is too well settled to require citation of authorities that a court should never instruct a verdict in behalf of either party if the issue of fact to be determined is supported by evidence upon which reasonable minds could differ; and that judgment non obstante veredicto should never be rendered in a case, unless a directed verdict would be proper."

We also think it is so well settled as not to require citation of authorities that, whether or not the County abandoned the right to use 50 ft. on the outer edges, the north and south sides of the 200 ft.-in-width strip, as a part of the highway known as Cadiz Street, as found by the jury, was a question of fact inferable from the acts of the County, or its failure to act, of a nature inconsistent with an intention on its part to retain and assert an easement therein.

The main contention is that, as there was ample evidence to support the finding that Dallas County had abandoned 50 ft. in width of the 200 ft. strip previously dedicated by plaintiffs, the court erred, both in refusing to render judgment in their favor on the verdict of the jury and in rendering judgment non obstante veredicto in favor of the County.

The question raised requires an examination of the evidence, the most material one item of which, in our opinion, is the resolution adopted on August 5, 1935, by the Commissioners' Court of Dallas County, relinquishing to Martin Weiss, and abandoning for highway purposes, a strip 50 ft. in width on each side of a 200 ft.-in-width strip of land previously dedicated to the County by Martin Weiss and wife for use as right of way for Cadiz Street, said strip extending from the Cadiz Street Viaduct, east 720 ft. on the north side and 630 ft. on the south side. The significant bearing of this fact on the issue, whether or not the County had also abandoned similar strips on the north and south sides of the 200 ft.-in-width strip dedicated by plaintiffs for the identical use, in our opinion, is that the strip dedicated by plaintiffs adjoins immediately—at its east end—the strip of land dedicated by Weiss and wife, and extends Cadiz Street 242 ft. on the north side and 278 ft. on the south side, the combined dedi-

cations constituting 962 ft. of the north side of Cadiz Street and 908 ft. of the south side, the condition surrounding the two strips being substantially the same.

Plaintiffs also offered in evidence the official plat of Dallas County, compiled by its engineer under provisions of Art. 7344, R.C.S., showing Cadiz Street to be only 100 ft. in width; also, there was evidence tending to show that, for several years, the land in question had been misused by various persons for commercial profit; that is, for billboards displaying commercial advertisements; and for parking stations for hire; all this, after the Commissioners' Court had been informed by plaintiff Miller of such misuse. There was no evidence showing or tending to show either a present necessity or purpose, on the part of the County, to use the 50 ft. strips for highway purposes; or an intention to use the land for such purpose in the future. The decision of the Commissioners' Court, based upon the advice of the county engineer, that the 50 ft.-in-width strips on the north and south sides of the land dedicated by Weiss were not needed for highway purposes, hence were abandoned, was a circumstance strongly tending to show that the similar 50 ft. strips on the immediately adjoining Miller dedication, conditioned substantially as the Weiss land, were not needed or intended to be used as a part of the highway, which, together with the other facts and circumstances, we think, clearly presented the issue of abandonment, and sustain the finding of the jury that the County had abandoned the similar 50 ft. strips on the north and south sides of the land previously dedicated by plaintiffs. See Muhle v. N. Y., T. & M. Railway Co., 86 Tex. 459, 25 S.W. 607; 1 Tex.Jur., p. 11, Sec. 11.

If, as found by the jury, the County abandoned the 50 ft.-in-width strips of land for highway purposes, the right was lost and cannot be revived except by a new dedication. McLennan County v. Taylor, Tex.Civ.App., 96 S.W.2d 997. Although several commissioners testified that the County did not intend to abandon the use of the strips of land in question, their testimony was not conclusive, but merely evidence to be considered in connection with the other facts and circumstances. If this were true, as said in the Note to Phy v. Hatfield (Sup.Ct., Tenn.), 135 Am.St.Rep. 892, " * * * it would follow that all any party would have to do in order to defeat the defense of abandonment would be to say he did not intend to abandon. The intention in such a case is to be derived from all the facts and circumstances of the case. * * * Abandonment, being a matter of intention, operates instanter: * * * Where the conduct of the party is such as to necessarily show an abandonment, he cannot evade the logical effect of his conduct by denying that he had any intention of abandoning the property: * * *."

However, it is contended that the right of the public to use the strips of land in question for highway purposes, having become vested by virtue of the dedication, the Commissioners' Court was without power to abandon such right. This proposition, in our opinion, is unsound. Sec. 18 of Art. 5 of the Constitution, Vernon's Ann.St., confers upon commissioners' courts jurisdiction over all county business; and Art. 2351, R.C.S. provides that such courts shall, "3. Lay out and establish, change and discontinue public roads and highways. * * * 6. Exercise general control over all roads, highways, ferries and bridges in their counties." It is thus seen that commissioners' courts are expressly authorized, not only to lay out and establish, but to change, discontinue and exercise general control over all roads and highways.

We have carefully examined the authorities cited in support of the propositions stated above, and find neither in point. The cases cited, except one, involved the authority of the Commissioners' Court to destroy or interfere with rights acquired by abutting property owners; denying such authority, but neither case announced the doctrine that the Commissioners' Court, acting for the public, could not abandon a highway, either in part or in its entirety. The other case cited, that of Yows v. Commissioners' Court, Tex.Civ.App., 41 S.W.2d 677, involved the construction of Art. 6703, R.C.S., which, in our opinion, is not applicable to the case at bar.

For the reasons stated, we are of opinion that the court erred in rendering judgment in favor of the County non obstante veredicto, but should have rendered judgment in favor of plaintiffs on the verdict of the jury. Therefore, the judgment below in favor of the County is reversed, and judgment here rendered for plaintiffs, on the verdict in their favor.

Reversed and rendered.

BOND, Chief Justice (dissenting).

I dissent from the view of the majority, sustaining appellants' "Point One" (as they designate their complaint), that the trial court erred in rendering judgment for Dallas County, non obstante veredicto. The question involved is of such importance to the public welfare that it behooves this court to give, more in detail, the facts and circumstances revealed by the record. The assignment presents a question of law. Rodriguez v. W. O. W. Life Ins. Soc., 136 Tex. 43, 145 S.W.2d 1077.

The language employed by Judge Looney in the former appeal involving this cause (Miller v. Dallas County, Tex.Civ.App., 71 S.W.2d 377, 381, writ refused), is appropriate here; I quote: "It was a mere impertinence on their [appellants'] part in attempting to destroy the rights of purchasers and the general public" in the easement here involved.

In my opinion, the former appeal forecloses appellants' recovery in this suit. The issues joined there are the same as presented here: Appellants, in the former suit, sought to recover possession of the same land from the same defendants, and on substantially the same grounds as urged in this appeal; that is, the strip of land, 50 feet wide, on each side of Cadiz Street, alleged to belong to appellants, hence entitled to the right of possession. In the present suit, they are also claiming possession of the land as against the public and owners of abutting property. In the former suit, the Millers (appellants) sought to sustain their cause of action on evidence that the land was never dedicated to the public and that the owners of abutting property had no right adverse to Millers' claim. In the present suit, appellants sought to sustain the same cause of action on evidence of abandonment and that the abutting property owners purchased their land with knowledge "that the plaintiffs (appellants) were then attempting to secure a relinquishment of the land at the time of their purchase," therefore, were not innocent purchasers.

In the former suit, the County of Dallas and the Industrial Properties Corporation were awarded judgment against the Millers for possession of the land here involved, and were decreed an easement "over and across all of the premises for street and road purposes" and the Millers, who were building a gasoline station thereon, were perpetually enjoined from obstructing the roadway. This reported judgment is set forth in plaintiffs' petition and made a part thereof; and then, plaintiffs alleged that "The premises above described purport to constitute a right of way 200-ft. in width for what is known as Cadiz Street, and since that time the County of Dallas has paved a portion thereof and is using a strip down the center of such premises which plaintiffs believe to be 40' in width"; and they further alleged that "since the date of the aforesaid judgment, the defendant W. T. Cox has acquired property close to the intersection of the south line of Cadiz Street and the east line of Industrial Boulevard, and that there is now located upon said property an arena operated by the Sportatorium, Inc., or said Cox, used for wrestling and boxing exhibitions and for other sport exhibitions of various kinds, which attract a large number of people, and for which admission is charged." Then the petition sets forth complaint of the use of the street by the Sportatorium and its patrons, and then concludes that "such use of the easement or right of way *belonging to the County of Dallas* (italicized for emphasis) has been with the full knowledge and permission of defendant County of Dallas, actual notice of the existence of such circumstances having been given to the defendant County of Dallas in May of 1937 by these plaintiffs by appearing before a meeting of the Commissioners' Court of Dallas County * * *."

Thus it will be observed from plaintiffs' petition that the Millers recognized the jurisdiction of the Commissioners' Court of Dallas County over and across the 200-foot easement as "belonging to Dallas County," and that Dallas County has made valuable improvements thereon and has exercised control of its use by abutting property owners since the former judgment in said cause. Such recognition, I submit, subjects the pleadings to general demurrer, therefore, here presents fundamental error. Then, too, at the conclusion of the testimony, motions filed by the several defendants for instructed verdict should have been sustained, or the jury discharged and judgment rendered in favor of the defendants. There is no evidence of probative force to sustain the verdict of the jury.

The historical facts of this litigation are revealed in the report of the former decision of this court. I refer to the decision wherein the history, in part, is related— Miller v. Dallas County, Tex.Civ.App., 71 S.W.2d 377. Prior to 1928, Royal C. Mil-

ler, his sister, Mrs. Emma Miller Exline, and her husband A. L. Exline, were the owners of 326.5 acres of land lying immediately west of the old channel of the Trinity River, wholly within the river bottom and without the limits of the City of Dallas. The limits of the City extended east of the river, the river being its west boundary line. At that time, the land was unimproved, covered with brush and weeds usually found on bottom land, and was used only for pasturing stock. On April 3, 1928, anticipating levee improvements by the City and County Levee Improvement District, all parties at interest worked out a cooperative plan for improvements which comprehended the building of Cadiz Street railroad underpass, and the extension of Cadiz Street from the City limits through the reclaimed land to the Cadiz Viaduct which spans the floodway from the east to the west levees. The owners of the land donated the right of way for the contemplated Cadiz extension, also for the Industrial Boulevard and Corinth Street Viaduct. The Industrial Boulevard was to extend north and south through the center of the reclaimed land, crossing Cadiz Street and the Corinth Street Viaducts (located some distance south of the Cadiz Viaduct). It, too, extended across the floodway. At that time appellants submitted to the City and County of Dallas a 200-foot strip across their land for boulevard and parkway purposes, for Cadiz Street extension, as proposed by the City and County of Dallas, on the following conditions: "First. That levee assessment be assumed or taken care of by the City or County, as to this 200 foot strip, in proportion to the assessment on the remaining tracts adjoining, of donors. Second. That the 200 foot given shall be used only for street and parkway purposes. Third. That the 40 foot concrete driveway along one side of the proposed parkway be built forthwith, and the other proposed 40 foot driveway on the other side of parkway be graded now but not paved, all as outlined by the City Plan. Fourth. That expense of paving and improving this highway and parkway is not to be assessed against adjoining property of donors. Fifth. That proper crossings through 70 foot parkway be provided for every 600 foot connecting the proposed driveways. Sixth. Provided that clearing, transplanting and grading be pushed to completion and that construction of concrete roadway be started immediately upon avail-

ability of funds voted at the recent bond election." 71 S.W.2d 377, 378.

This proposal or tender was accepted by the City and County authorities in charge of the improvements. Martin Weiss, owner of land immediately west of the Miller land, also dedicated an easement 100 feet in width, thus extending the Cadiz Street right of way from the Miller tract to the new channel of Trinity River; and, at a subsequent date, tendered another dedication of 50 feet on each side of his first dedication, specifying its purpose,—for the approach to the viaduct. This last dedication and its subsequent release will be discussed later in this opinion.

In 1932, the City of Dallas passed a resolution, purporting to relinquish to the Millers the easement here, and perforce of that relinquishment, the Millers began the construction of a gasoline station thereon. In the former decision of this court (71 S.W. 2d 377), it was expressly held that the 200-foot strip of land was dedicated to the public and that the City of Dallas was without power to relinquish the rights of the public to the dedication. This was in consonance with the holding of our Supreme Court in the case of Dreeben v. Whitehurst, Tex. Com.App., 68 S.W.2d 1025, 1027.

In the case of Dreeben v. Whitehurst, supra, the County of Dallas was the owner of an easement across Dreeben's land for the purpose of getting gravel. Whitehurst secured a release from the Commissioners' Court and then brought suit for his services. In the course of the opinion, Judge Harvey, of the Commission of Appeals, said: "The instrument of October 2, 1920, did not have effect to invest the county with title to any of the land involved in this controversy. It did not even operate to invest the county with title to any gravel in place in or under the land. With regard to the land involved in this controversy, the principal effect of the instrument was conditionally to license the county to go on the land and, within a reasonable time, remove therefrom a limited quantity of gravel and thus acquire title to the gravel so removed. Houston Oil Co. v. Boykin, 109 Tex. 276, 206 S.W. 815. This was a property right which the commissioners' court could not lawfully give away. The order made by that body, on November 22, 1928, did not effect a transfer to Mrs. Dreeben of any rights at all."

That, in my opinion, is one of the underlying principles of law involved in this ap-

peal. The Commissioners' Court is without power to sell, cede or abandon a vested right of the public or the abutting landowners in a highway purchased, donated, or prescribed, upon which substantial improvements have been made at expense of the public treasury. In 14 T.J. 689, Sec. 6, the author said: "In every dedication the public is the real transferee of the use of the land and the only transferee necessary to the transaction, whether the dedication be effectuated through the medium of a conveyance to a county or city or to a private person, and whether no conveyance be made at all." The Commissioners' Court is merely the trustee for the public. The public right to a highway is not dependent upon the recognition of that right by the municipal authorities of the County, but is acquired by adverse use.

Indeed, acceptance by public use is requisite; a comparatively short period of use is sufficient for this purpose. All that is required is that the use should be for such period that it may fairly be inferred that the public desires to accept in perpetuity the offer of use which the owner has held out. Richardson v. City of Dallas, Tex.Sup., 16 S.W. 622. Therefore, "Neither the city officials nor any other public official would have any power to defeat the right of the public in property thus dedicated to public use." Sanborn v. City of Amarillo, 42 Tex. Civ.App. 115, 93 S.W. 473, 474, writ refused.

In the case of the City of Dallas v. Gibbs, 27 Tex.Civ.App. 275, 65 S.W. 81, 82, there had been an express dedication and formal acceptance by the City of land for street purposes, and the City had failed to open a portion of the street for thirteen years; the court there held: "The city having accepted the dedication of the land, it vested in the public for street purposes, and we are of the opinion that no delay of the city authorities in putting the land to the uses for which it was dedicated can deprive the people of their rights in the street." In City of Houston v. Finnigan, Tex.Civ. App., 85 S.W. 470, 473, writ of error refused, a street was dedicated and accepted, and encroachments of adjacent property owners were allowed on 25 feet of the street; the court in that case held that, "Having found generally a dedication and acceptance of Seventh street to the bayou, it follows that, in order for plaintiff to hold the 25-foot strip, it must appear, either that he had reacquired it by limitation of 10 years, or else that it was withdrawn prior to the city's acceptance of it as a street, * * *" saying, in effect, that "there is no abandonment here, as merely allowing encroachments does not constitute abandonment." In the case of MacFarlane v. Davis, Tex.Civ.App., 147 S.W.2d 528, 531, the Commissioners' Court of Orange County passed an order to abandon a road and tear down a trestle, which would prevent public use of the road. The owners of property abutting on the road brought suit to enjoin the county from enforcing the order. The court said: "If appellees' [Commissioners' Court] power to discontinue the abandoned section of highway No. 87 as a public road be conceded, this power is restricted to the abandonment of its maintenance as a public highway, and does not include the power to tear down the trestle and deny its use to appellants who bought their property abutting on the highway, the value of which would be destroyed, or greatly impaired, by the destruction of the trestle. In support of this conclusion, [the court] quoted the following proposition from the Kaiser case, supra, ([Commissioners' Court of Harris County v. Kaiser, Tex.Civ.App.] 23 S.W.2d 840): "The power to discontinue a public road conferred by the cited statute is restricted to abandonment by the county of its maintenance as such public highway, and does not include the right to deny its use to the owners of property situated thereon." Indeed, land dedicated, either to a county, or to private parties, for a special use may be abandoned where the utility of such use no longer exists, but land dedicated to public use, and accepted, as a road or street cannot be abandoned. Sanders v. Cauley, 52 Tex.Civ.App. 261, 113 S.W. 560; State v. Travis County, 85 Tex. 435, 21 S.W. 1029; McLennan County v. Taylor, Tex.Civ.App., 96 S.W.2d 997.

In the case of State v. Travis County, supra, the Republic of Texas granted to Travis County, limited to court house purposes, a block of land in the City of Austin. Even in that early day (1893), our Supreme Court said [85 Tex. 435, 21 S.W. 1031]: "The state had the power to make an unqualified or unlimited dedication; and, if it had done so, it could not now defeat it, but, instead of that, it limited the use to an expressed purpose. The privilege proposed by the state and accepted by the county was that the county might use the land as a site for its courthouse and jail as long as it should choose to do so."

The county maintained a court house and jail on the site for a number of years, and then abandoned the site and erected a new court house and jail about three-fourths of a mile from the old court house site. Under the law, a county could maintain only one site for its seat of government, and, having selected another site, and the limitations placed upon the dedication, or grant, it was held that such operated as an abandonment of the use of the property for the purposes to which it had been dedicated and the land had reverted back to the State. In that opinion, the court cited the case of Lamar County v. Clements, 49 Tex. 347, and, commenting on its holdings, said: "In that case the block was distinguished in the plat by which other lots were sold by the words 'Public Square' and nothing else. The use was unlimited, and it was decided (correctly, we think) that it could not be revoked or changed. We do not think that the county could lose the right to occupy and use the land except by an abandonment, intended to be permanent, of the specified uses." In McLennan County v. Taylor, supra, cited in the majority opinion as holding that, a road having been abandoned, the right was lost and could not be revived except by a new dedication, a reading of that opinion clearly shows that a dedication of a road, its acceptance by the county, and valuable improvements placed thereon, and owners of property abutting on the road having purchased with reference to the road, the dedication became irrevocable and the county's non-use of it could not operate to revoke the dedication.

The record here shows that on March 15, 1928, before any improvements were made on the road, appellants conveyed the 326.5 acres of land to Bowman & Cravens; their deed reciting: "The grantors herein expressly except from the land herein described that certain tract of land containing approximately two (2) acres heretofore sold and conveyed by the said grantors to the City of Dallas for the purpose of the extension of Cadiz Street * * *. The grantors (grantees) acquire the land herein conveyed subject to all existing easements held by the City of Dallas, County of Dallas, or other governmental agency or by public utility companies. The lands herein described are located in and constitute a part of the City and County of Dallas Levee Improvement District, and the grantees expressly assume all obligations to said City and County of Dallas Levee Improvement District." (71 S.W.2d 379)

Thereafter, the grantees, Bowman & Cravens, conveyed the 326.5 acres to Industrial Properties Corporation and it in turn conveyed a portion of the land, adjacent to the 200-foot right of way in controversy, to the defendants, Sportatorium, Inc., or W. T. Cox. In the former opinion, supra, Judge Looney, writing for this court, recited: "Subsequent to these transactions [that is, the dedication of the road, and the conveyance to Industrial Corporation], the county asserted its jurisdiction over the highway, graded the entire 200-foot right of way, paved a driveway in its center 40 feet wide, and graveled from 20 to 25 feet on each side of the 40-foot pavement." And, in addition to these disclosures, the record here shows that the City and County performed all the conditions precedent to the dedication; an underpass was constructed, the City acquired from other parties a 200-foot right of way at its corporate limits, to extend the right of way eastward from the land in dispute. The old river channel was filled and a culvert was extended beneath the surface of the street for the full width of the 200-foot right of way; a 40-foot concrete pavement was constructed to the full length of Cadiz Street extension. The Industrial Boulevard was paved and Corinth Street Viaduct was constructed across the floodway of the river. The evidence is undisputed that the County graveled the shoulders of Cadiz Street easement on each side of the 40-foot pavement, extending to the property lines of the Industrial Corporation, the Sportatorium and W. T. Cox; that the County laid a drainage culvert along or near the outer lines of the 200-foot right of way in dispute.

Mr. Cox, a witness offered by appellants, testified:

"Q. Mr. Cox, do you know whether or not there was ever any gravel placed upon any part of that two hundred foot right of way in this litigation prior to the time this forty-foot strip was paved or this forty-foot pavement was constructed? A. No, I do not. My first knowledge of that right of way came in the fall of 1935 when we were building the arena. It was graveled previous to that time by somebody; someone graveled part of the right of way on our side of the street, that is, on the Sportatorium side of it had been graveled previous to the fall of 1935.

"Q. Was that between or above the outer right of way line to the Sportatorium? A. That was the right of way on our side of the street.

"Q. Did that gravel work into the soil? A. Yes, there has been quite a lot of it graveled and it worked into the soil. It was not a good job when we went in and we added some gravel to the part that was on the street at the time we went on the property.

"Q. Did you ever see any graders or any tractors or any teams or graders clearing that right of way there? A. Yes, I have seen them there on several occasions on our side of the street and on the opposite side of the street also.

"Q. About how long ago was that? A. When we got the building completed, we talked to one of the highway men—I don't know his name—but he was doing some work down there, and he hauled several loads of gravel from away up the river down there and added it to the gravel that was there on our side of the street, and did a little grading and helped me with the drainage, and then he went across the street and opened up the ditch on the extreme side, and on the far side, and cut the weeds down over there for a couple of days; and then a year or two later, they did the same job over.

"Q. Did you observe any recent construction or pavement drainage out there on that right of way? A. Yes, Sir, this past summer they paved the entire roadway on our side and did quite a bit of work on the other side and also did quite a bit of work on the river bank over there."

Mr. Stemmons, a witness also offered by appellants, testified on cross-examination:

"Q. Mr. Witness, I want to try to get the lay of the land a little bit. This is the City (referring to a map) or toward the City of Dallas proper? A. Yes.

"Q. Cadiz Street comes down here and the underpass runs under the railroad track? A. Yes.

"Q. That is where the underpass is? A. Yes, Sir, that is your underpass right here.

"Q. And this is the old river channel? A. Yes, Sir, meandering down that way.

"Q. Now, somebody put a culvert or a bridge for the full width of that two hundred-foot right of way there, didn't they? A. There is a culvert under it."

On re-direct examination:

"Q. Mr. Stemmons, how wide is the culvert through which the old river channel flows? A. I don't know. I was not there when it was put in.

"Q. It is not two hundred feet wide, is it? A. Did you say it is not two hundred feet wide?

"Q. Yes. A. I don't know. I couldn't say that it is not.

"Q. I mean two hundred feet wide across the right of way of Cadiz Street? A. Do you mean along the entire two hundred feet? No.

"Q. Well, yes, I guess it would be two hundred feet—but, anyway, across Cadiz Street—Cadiz Street does not cross the old river channel under (over) a culvert two hundred feet wide, does it? A. I don't know, but I don't think it would be far short of it though."

Mr. I. O. Garrison, Dallas County Commissioner, in whose district the road in controversy is situated, also offered by appellants as a witness, testified:

"Q. What is paved? A. The street and part of the right of way.

"Q. How much of the street is paved? A. All of the forty feet.

"Q. Forty foot is paved down the center? A. Yes.

"Q. Is there anything else paved anywhere around there? A. Yes.

"Q. What is it? A. The driveway is paved in front of the Sportatorium; also in front of Goodie Goodie.

"Q. Along Cadiz Street? A. Yes, a portion of it.

"Q. When was it paved in front of the Sportatorium? A. Last summer some time.

"Q. It is paved and not graveled? A. No, it was paved with a gravel top.

"Q. Who did it? A. I did it.

"Q. The County did it? A. Yes.

"Q. The whole two hundred-foot right of way? A. The portion of it being the entire one hundred feet on one side and a portion of it is not paved.

"Q. Why did you pave that in front of the Sportatorium? A. Well, for two reasons: One reason was to protect the concrete in the center, because water was standing under it and getting into the mud; and, second, to help the public because they travel over it to get out of that mud.

"Q. They travel over it by the Sportatorium, don't they? A. Quite a bit.

"Q. They park up there, don't they? A. Yes, when the Sportatorium has boxing matches or wrestling matches, as well as any other time * * *.

"Q. What use for street and road purposes is the County now making of the outside fifty feet of that right of way on Cadiz Street? A. Do you mean at that intersection?

"Q. Well, I mean along Cadiz Street; what use for street and road purposes is being made of it? A. To protect my shoulders and the pavement along the right of way and obstructions to prevent hazards * * *.

"Q. You put a drainage ditch along the side of it? A. On a portion of it, I have, yes.

"Q. How far out is that drainage ditch from the edge of the pavement? A. On that north side, I judge forty-five foot right next to the right of way line and next to the Sportatorium, it is approximately twenty feet.

"Q. You say at the outer edge of the right of way line? A. On the north side, I judge it is forty feet or perhaps more.

"Q. Right out at the edge of it? A. Yes, right next to the property line. This is the right of way line. I had the engineer survey it and mark it and put the drainage ditch somewhere approximately there."

On Cross-examination:

"Q. Tell the jury the reason why those ditches were put in there? A. Well, for two reasons; one to eliminate damage to the pavement of the water getting in under it, and across it—every time we would have a rain we would have water standing in the concrete and getting in under the concrete, and we did it to protect our concrete, like we do on any other right of way drainage problem."

Then the witness testified that he placed signs and post markers on the outer line of the 200-foot right of way to warn the public not to obstruct it, that some such markers had been so placed before he became the commissioner (in 1937), and that the posts were still standing on that line.

In the light of this court's disclosure, and the uncontroverted evidence of the County's acceptance of the dedication, improvements and use of the dedicated strip, and appellants' recognition of the County's jurisdiction by complaining to the Commissioners' Court of obstructions on the right of way in 1937, subsequent to the former suit; and the sale by appellants of land abutting on the 200-foot strip with reference to the right of way, it is inconceivable that a conclusion would be reached, assailing the action of the trial court, or decreeing that the public, through the Commissioners' Court, abandoned the public use of a 50-foot strip; why not 60, 70 or 85-foot strip? Why stop at 50 feet?

For administrative purposes, the Commissioners' Court of each county in this state has the power conferred upon it by the Constitution and laws of Texas, to establish and regulate roads for the convenience of the public. Neither juries nor courts of law can usurp the court's power and determine the width of right of ways necessary for the public use.

The majority bases a reversal mainly on a resolution adopted by the Commissioners' Court on August 5, 1935, relinquishing to Martin Weiss a 50-foot strip of land on each side of a 200-foot strip previously dedicated by him, extending west and adjoining the dedication made by appellants; and on an official plat of Dallas County, compiled by its engineer, under provisions of Art. 7344, R.C.S., showing Cadiz Street to be only 100 feet in width. The record shows that appellants, over appellees' objection, introduced the resolution without limitation, thus were bound by its terms and recitals. The resolution (pertinent here) reads: "August 5, 1935. At a regular meeting of the Commissioners' Court held on Aug. 5th, 1935 * * * the following Order was unanimously adopted: Whereas, on or about the 18th day of February A D 1933, by a certain instrument recorded in Volume 1788, Page 422, of the Deed Records of Dallas County, Texas, Martin Weiss and wife, Charlotte Weiss, dedicated to the County of Dallas, a certain lot, tract or parcel of land * * * being 50 feet on each side of the original dedication of a 100-foot right of way for the east approach to the Cadiz Street Viaduct, reference being here made to said instrument for a more specific description, and Whereas, said tract of land was dedicated to the County of Dallas, and to the public without solicitation on the part of the County, and without its knowledge or request, and Whereas, said dedication was never accepted nor acted upon by the County of Dallas, and Whereas, said dedication makes said right

of way irregular in shape, and Whereas, said additional right of way has not been, and is not now, necessary for the construction, maintenance or widening of said approach to the Cadiz Street Viaduct; * *."; and all rights conferred by the dedication were abandoned.

It will be observed from the resolution that the dedication of the Weiss 50-foot strip "was never accepted nor acted upon by the County of Dallas," and that the Commissioners' Court determined that the extra strip was not necessary for the purposes for which Weiss offered the dedication. "In order to constitute a complete or valid dedication the offer or tender of use of the property must be accepted by, or on behalf of, the public. * * * Without a sufficient acceptance no rights vest in the public or in the public authorities; the land is still taxable to the owner, and the offer of a dedication may be revoked or may lapse by the expiration of the time within which it must be accepted by those for whose use it was intended." 14 T.J. 710, Sec. 21. The purpose of the tendered dedication, as shown by the court's order, was to maintain or widen the approach to the Cadiz Street Viaduct; hence, when there was no longer any need for the dedicated 50-foot strips, the tender was at an end. It is evident that no such condition surrounds the Miller dedication. In my opinion, the resolution was not admissible evidence; if so, it had no probative force.

The official map of Dallas County was also offered in evidence. This map was prepared by the County engineer from the records of deeds of Dallas County, for purposes of assessing and collecting state and county taxes. The easement here involved was never recorded, and there is no evidence that the Commissioners' Court ever saw the plat, or passed an order approving same. Clearly such evidence was not admissible to show an abandonment of the land in suit for the use of the public.

Abandonment is closely related to, and in some respects is identical with, the doctrine of waiver or estoppel. Abandonment, accordingly, is the relinquishment of a right, a total desertion, the giving up to no one in particular of something to which one is entitled. "Property may be said to be abandoned when the owner throws it away, or when it is voluntarily left or lost, without any intent or expectation to regain it. It is often said that abandonment is a matter of intention, but this is the statement of a rule of evidence rather than a definition." 1 Tex.Jur., p. 3, Sec. 2. Shahan v. Northern Texas Traction Co., Tex.Civ.App., 266 S.W. 850; Sikes v. State, Tex.Cr.App., 28 S.W. 688; Worsham v. State, 56 Tex.Cr.R. 253, 120 S.W. 439, 18 Ann.Cas. 134.

The majority opinion is to the effect that the Commissioners' Court abandoned the easement of 50 feet on each side of the 200-foot right of way, by the relinquishment of another and distinct 50-foot strip of the Martin Weiss dedication, wholly disconnected from the Miller dedication; and by a plat made by the County's Civil Engineer; and by misuse by various persons for commercial purposes, with knowledge of the Commissioners' Court of Dallas County, hence the public is estopped to use the Miller strip for road purposes.

The doctrine of estoppel is held not to be applicable to a county where it acts as a subdivision of the state and in right of the sovereignty of the State; and in no event can a county be estopped by unauthorized acts on the part of its officers, or agents. Scaling v. Williams, Tex.Civ.App., 284 S.W. 310; Marsalis v. Garrison, Tex.Civ.App., 27 S.W. 929.

It is evident that I do not subscribe to the view expressed by the majority. The judgment of the court below should be affirmed.