NEW YORK LIFE INS. CO. v. WILKINSON VENEER CO., Inc., et al.
Civ. No. 1750.

United States District Court
E. D. Louisiana, New Orleans Division.
Oct. 20, 1949.

Phelps, Dunbar, Marks & Claverie, Ashton Phelps, New Orleans, La., for plaintiff.

Kelleher, Hurley & Kohlmeyer, Charles Kohlmeyer, Jr., New Orleans, La., for Wilkinson Veneer Co.

Bauer & Bauer, Theo W. Bauer, Franklin, La., for George C. Lucas.

BORAH, Chief Judge.

This is an action to cancel a policy of life insurance on the ground that the insured's answers to questions in the application were false, and that they were material to the risk and that had the true facts been revealed, the policy would not have been issued.

The case is before the court at this time on a motion for summary judgment filed by the plaintiff pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., and is submitted on the pleadings, depositions, affidavits, exhibits, and documentary evidence. The defendant has also filed and submitted a motion for summary judgment on its counterclaim for the face value of the policy.

The defendant has moved to strike from the record certain of the affidavits, depositions and exhibits filed by the plaintiff on the ground that this evidence would not be admissible if the case was tried on the merits. The plaintiff also objects to the affidavits offered by defendant in support of its counter motion for summary judgment for the reason that they are wholly irrelevant, incompetent and immaterial to the issues in this case.

Rule 56(e) prescribes the form and content of affidavits used in support of or opposition to a motion for summary judgment. The rule requires that such affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence upon a trial. There is no requirement, however, that every statement in the affidavit must meet this test. Where the affidavit includes both competent and incompetent evidence, the court should disregard the incompetent evidence and confine its consideration to such statements as would be admissible in evidence at a formal trial. See Banco De

Espana v. Federal Reserve Bank of New York, 114 F.2d 438, 445. Where a deposition is used at the hearing on the motion for summary judgment, the testimony does assume the form of testimony given in court. The court would not strike the entire testimony of a witness merely because a portion of his testimony is incompetent. The same rule is to be applied to supporting affidavits.

Accordingly, defendants' motion to strike is denied.

The defendant by way of defense maintains that the court should dismiss plaintiff's motion for summary judgment for the reason that there are very definite genuine issues in respect to the material facts involved in this case, namely, whether or not the insured truthfully answered all of the questions propounded in his application for insurance, whether or not he was guilty of any fraud or negligence in answering the questions, and if it be found that those questions were improperly answered, whether the falsity of the answers, if proved, would have the legal effect of avoiding the policy. In the alternative and in the event that the court is of the opinion that there is no reason for difference as to the facts of the case, it is urged that those facts favor defendant and that a summary judgment in its favor on the counterclaim which it has filed herein should be rendered.

The ultimate facts essential to a determination of the questions presented are not controverted and there are no genuine issues as to any of the material facts; their legal consequences, however, are disputed. Briefly stated, the facts are these:

On September 20, 1945, the defendant, Wilkinson Veneer Company, applied to the plaintiff, New York Life Insurance Company, for insurance on the life of defendant, Thayer Thomas May, in the sum of $15,000 to protect it on some lumber contracts which it then had with May. May consented to and joined in the application and certified that all the statements, representations and answers contained therein were true.

May took his first physical examination on September 28, 1945, and over his signature answered certain questions which formed a part of the application for insurance as follows:

"7. B. Have you ever been under observation or treatment in any hospital, clinic, asylum or sanitarium? No.

"7. E. Have you ever raised or spat blood? No.

"8. Have you ever had, or ever consulted a physician or practitioner for, any ailment or disease of * * * B. The Heart, Blood Vessels or Lungs? No.

"10. Have you ever had, or ever consulted a physician or practitioner for, any ailment or disease not included in your above answers? Yes—Malaria—one attack 1940—duration one week—mild, not confined to bed—(Physician—Dr. Guy Aycock, Franklin, La.)

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? None."

On the following day May took a second physical examination and answered the same questions in the same manner except that the attack of malaria was described as "moderate."

On January 16, 1946, plaintiff issued to Wilkinson Veneer Company (later succeeded by Wilkinson Veneer Company, Inc.) its policy No. 19-034-311 on the life of the defendant May, in the sum of $15,000 naming the said Wilkinson Veneer Company as beneficiary.

On July 11, 1946, George C. Lucas acting in May's behalf addressed a letter to plaintiff claiming that May was totally and permanently disabled and entitled to disability benefits under another policy which is wholly unrelated to the issue here.

On October 11, 1946, plaintiff notified defendants in writing of its election to cancel and rescind the policy in suit for misrepresentations, tendering return of the premium of $898.87, which tender was refused.

On November 6, 1946, May applied to plaintiff for disability benefits on the aforementioned wholly unrelated policy of insurance, claiming to have been totally and permanently disabled since February 1, 1946, because of "cancer of lung and spinal

column" and a month thereafter the instant suit was filed.

May's testimony as a witness on behalf of defendant was taken pursuant to stipulation on January 6, 1947. At the time of taking his deposition May was critically ill of cancer of the lungs and spinal column. He died during the following month. Thereafter his executor, George C. Lucas, was substituted as party defendant.

Coming now to a consideration of May's deposition we find that in the month of July, 1945, he was suffering from a chronic cough which had persisted for a period of approximately two weeks and during which period he brought up occasional flecks of blood in his sputum. One evening during the period aforementioned, May's close personal friend, Dr. Spiller, was a guest for dinner, and observing May's cough and the fact that Mrs. May had failed to gain weight following the birth of a baby, the doctor suggested that they have chest x-rays made at the Charity Hospital. This they did on July 29, 1945. These plates were developed forthwith and Dr. Spiller advised that there was nothing in Mrs. May's plate to concern him, but he thought in May's case it would warrant taking a sputum test for tuberculosis. When this turned out to be negative, Dr. Spiller requested that another test be made because he did not like the looks of the plate. Both of these tests were made at Charity Hospital and were negative for tuberculosis though blood flecked. When Dr. Spiller made his report to May on the second sputum test he told May that if he was going to New York he had better have some one up there examine his chest, but May attached no importance to this suggestion and ignored the advice of Dr. Spiller.

Turning now to a consideration of the evidence at which is levelled defendant's motion·to strike, we find that the x-ray plate taken at Charity Hospital shows a definite possibility ·of cancer of the lung area. The reading by Drs. Bowie and Teitelbaum shows the possibility of a primary bronchogenic tumor and states that further examination would have been of aid in determining whether the density shown represents a metastasis. Apparently the same conclusion was reached in the reading at Charity Hospital of the x-ray plate. Truax, plaintiff's investigator, called at Charity Hospital in August of 1946 to ascertain the medical history of the insured and was given what purported to be a copy of the x-ray reading in connection with the x-ray of July 29, 1945. This report suggests "the possibility of bronchogenic carcinoma. The possibility of bronchiectasis might also be considered in the diagnosis." Dr. Campbell, plaintiff's medical director, who passed on the application in suit testified that he relied upon the answers in the application believing them to be full, complete and true, and that had he known of the x-ray he would have asked that the x-ray film be forwarded to their home office for interpretation, and if this request was not complied with, they would have declined the application. If the x-ray was forwarded and their specialists made the same interpretation as recited above, they would not have approved the application for insurance.

Dr. Wilson, an expert witness on chest diseases, testified that the spitting of blood is a very important symptom of disease in the air passages of the lungs, particularly[9] since it is an indication of some of the more serious diseases of the lungs, namely, tuberculosis and malignancy; that there are other conditions which may cause blood spitting, but cancer and tuberculosis are suspected until proven absent; that normal people do not have blood flecks in their sputum and that in patients having these clinical symptoms, the possibilities of serious disease are very great. In respect to the importance of the question in relation to blood spitting he stated that an individual who spits up blood is a comparatively bad risk from the point of view of insurance companies until it is shown that he has not one of the two or three major conditions which cause this symptom.

While we do not agree with defendant that Dr. Wilson's testimony should be stricken as irrelevant and immaterial, we do agree that it is not conclusive of, but only evidentiary as to, the materiality of the answer. And the evidence of Dr. Campbell

leaves no doubt that the company regarded all the answers as material.

The defendant, citing Act No. 227 of 1916, which provides that every life insurance policy shall contain the entire contract between the parties, and that nothing shall be incorporated therein by reference unless endorsed upon or attached to the policy issued, and a provision of the policy itself which provides that the policy and the application constitute the entire contract, insists that the testimony of Dr. Campbell, the affidavits of Drs. Bowie and Teitelbaum, the affidavit of Truax, the x-ray plate itself, as well as certain portions of May's deposition in reference thereto are patently inadmissible. We think otherwise, and believe that the evidence is admissible to refute May's denial that he had never been under observation in the hospital, and had never consulted a physician for a lung ailment or consulted a physician generally.[1]

Coming now to the merits we find it unnecessary to consider all of the answers of the applicant to the questions propounded in his application. It is deemed sufficient for the purposes of this case that the applicant for insurance, as part of his application and as an inducement to the issuance by plaintiff of its policy, stated in response to question 7 E. that he had never raised or spat blood. The answer sought to be elicited by the question was an answer of fact and not of opinion.[2] May, according to his own definition as to what constitutes spitting of blood, knew that he had raised or spat blood only nine weeks before being examined for this policy and he also knew that in the summer of 1945 that he was "getting up a little blood from his throat" as he had experienced on several prior occasions. His answer to this crucial question was therefore knowingly untrue; it was material to the risk; and the plaintiff was thereby deceived and induced to issue the policy herein which it cannot reasonably be supposed it would have done if it had known of the sputum test, the blood spitting and Dr. Spiller's conclusion that May should seek expert advice in New York.

In the more recent case of Rhodes v. Metropolitan Life Insurance Company, 5 Cir., 172 F.2d, 183, 186, which followed in the wake of Jefferson Standard Life Insurance v. Stevenson, 5 Cir., 70 F. 2d 72, the court in determining the applicable general rule in Louisiana, said: "Whether false answers knowingly made are fraudulent, as a matter of law, we need not now decide. It is sufficient, if admitting the good faith of the insured, the evidence establishes misrepresentation of a material fact of such import that had the truth been revealed the policy would not have issued." On the basis of this decision we conclude that plaintiff's motion for summary judgment should be granted.

Judgment in favor of the plaintiff and against the defendant shall be entered and an order for judgment shall be prepared and submitted forthwith by the prevailing party.

1. Cf. Kirschner v. Equitable Life Assurance Society, 157 Misc. 635, 284 N.Y.S. 506 and Roriguez v. W. O. W. Life Insurance Society, 136 Tex. 43, 145 S.W.2d 1077.

2. See Metropolitan Life Insurance Company v. Madden, 5 Cir., 117 F.2d 446, which case was cited with approval in the concurring opinion of Hutcheson, J., in the case of Rhodes v. Metropolitan Life Insurance Company, 5 Cir., 172 F. 2d 183.